# No. 24-1963

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

▶▶◀◀

OPENAI, INC.,

*Plaintiff-Appellee,*

v.

OPEN ARTIFICIAL INTELLIGENCE, INC. AND GUY RAVINE,

*Defendants-Appellants.*

On Appeal From The United States District Court For The Northern District Of California
*Hon. Yvonne Gonzalez Rogers, District Judge*
*Case No. 4:23-cv-03918-YGR*

## APPELLEE'S ANSWERING BRIEF

Margret M. Caruso
Robert P. Feldman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Drive 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Robert M. Schwartz
Aaron H. Perahia
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

William B. Adams
Dylan I. Scher
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Sam S. Stake
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

*Counsel for Plaintiff-Appellee*

June 5, 2024

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellee

OpenAI, Inc. states that it is a non-stock corporation and has no parent corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF AUTHORITIES .......................................................................iv

PRELIMINARY STATEMENT .....................................................................1

COUNTER-STATEMENT OF ISSUES ...........................................................5

COUNTER-STATEMENT OF THE CASE .......................................................5

    A.    OpenAI's 2015 Founding And Its OpenAI Mark ...............................5

    B.    Defendants' Fraud On The PTO ...................................................7

    C.    Defendants Sow Consumer Confusion ............................................9

    D.    The Proceedings Below ..............................................................12

        1.    The Preliminary Injunction Hearing And Order .....................12

        2.    Defendants' Request For An October 2025 Trial Date ...........14

        3.    The Order Denying Defendants' Motion Under Rule 59(e) And Rule 60(b) ............................................................15

        4.    Defendants' Appeal ......................................................16

SUMMARY OF ARGUMENT ...................................................................16

STANDARD OF REVIEW .......................................................................18

ARGUMENT.........................................................................................20

I.    THE DISTRICT COURT WAS WELL WITHIN ITS DISCRETION TO CONCLUDE THAT OPENAI IS LIKELY TO SUCCEED ON THE MERITS OF ITS TRADEMARK INFRINGEMENT CLAIM ..........20

    A.    OpenAI Is Likely To Succeed In Showing Senior, Protectable Trademark Rights ..................................................................20

        1.    OpenAI Had Protectable Trademark Rights No Later Than September 2022 ..............................................................21

            (a)    The "OpenAI" Mark Acquired Secondary Meaning By September 2022 ......................................21

            (b)    Defendants' Burden-Of-Proof Arguments Fail..............31

        2.    Defendants Did Not Make Any Relevant Use Before September 2022 ........................................................34

       (a)    Defendants Did Not Make Relevant Trademark Use Of Their Mark Until At Least November 2022 ......34

       (b)    Defendants Did Not Have Analogous Trademark Use Before September 2022..........................................36

   B.    Defendants Are Unlikely To Succeed In Showing OpenAI Delayed In Seeking Relief .............................................40

   C.    The Heightened Standard For Mandatory Injunctions Does Not Apply..................................................................43

II.    THE DISTRICT COURT WAS WELL WITHIN ITS DISCRETION TO CONCLUDE THAT THE EQUITABLE FACTORS FAVOR A PRELIMINARY INJUNCTION ..................................................45

   A.    OpenAI Would Be Irreparably Harmed Absent A Preliminary Injunction..................................................................45

      1.    There Is A Presumption Of Irreparable Harm .......................45

      2.    Even Without The Presumption, There Is Significant Evidence Of Irreparable Harm ................................46

   B.    Defendants Identify No Material Harm To Them From A Preliminary Injunction ..........................................49

III.   THE PRELIMINARY INJUNCTION IS NOT OVERBROAD .................50

IV.   THE DISTRICT COURT PROPERLY DENIED DEFENDANTS' MOTION UNDER RULE 59(E) AND RULE 60(B) .................................53

CONCLUSION ........................................................................57

REQUEST FOR ORAL ARGUMENT ................................................59

CERTIFICATE OF SERVICE.........................................................62

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*165 Park Row, Inc. v. JHR Dev., LLC*,
  2013 WL 6384819 (D. Me. Dec. 6, 2013) ....................................... 28

*Abdou v. Davita, Inc.*,
  734 F. App'x 506 (9th Cir. 2018) ................................................... 48

*Activision Publishing, Inc. v. Activision TV, Inc.*,
  2013 WL 12145597 (C.D. Cal. July 18, 2013) ............................... 41

*Adray v. Adry-Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1995) ........................................................... 23

*American Automobile Association of Northern California, Nevada &
  Utah v. General Motors LLC*,
  367 F. Supp. 3d 1072 (N.D. Cal. 2019) .......................................... 37

*American Rena International Corp. v. Sis-Joyce International Co.*,
  534 F. App'x 633 (9th Cir. 2013) ............................................. 18, 19

*Adidas America, Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ......................................................... 48

*Andrusiek v. Cosmic Crusaders LLC*,
  2022 WL 4103636 (T.T.A.B. Sept. 6, 2022) .................................. 38

*Anova Applied Electronics, Inc. v. Inkbird Tech. C.L.*,
  2023 WL 5177491 (W.D. Wash., Aug. 11, 2023) ........................... 46

*Athleta, Inc. v. Pitbull Clothing Co.*,
  2013 WL 142877 (C.D. Cal. Jan. 7, 2013) ............................... 41, 44

*Avery Dennison Corp. v. Sumptom*,
  189 F.3d 868 (9th Cir. 1999) ......................................................... 20

*Bosley Medical Institute, Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005) ......................................................... 52

*Braun Inc. v. Dynamics Corporation of America*,
　　975 F.2d 815 (Fed. Cir. 1992) ........................................................29

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
　　434 F.2d 794 (9th Cir. 1970)............................................................33

*Certain Interested Underwriters at Lloyd's, London v. Bear, LLC*,
　　796 F. App'x 372 (9th Cir. 2019)......................................................43

*Chance v. Pac-Tel Teletrac Inc.*,
　　242 F.3d 1151 (9th Cir. 2001)..........................................................38

*Cicena Ltd. v. Columbia Telecommunications Group*,
　　900 F.2d 1546 (Fed. Cir. 1990) ........................................................22

*Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*,
　　572 F. App'x 491 (9th Cir. 2014)......................................................52

*Colonial Life & Accident Insurance Co. v. Stentorians-L.A. County
　　Black Fire*,
　　2013 WL 6732687 (C.D. Cal. Decl. 19, 2013) ..................................50

*Committee for Idaho's High Desert, Inc. v. Yost*,
　　92 F.3d 814 (9th Cir. 1996).......................................................19, 26

*Converse, Inc. v. Int'l Trade Comm'n*,
　　909 F.3d 1110 (Fed. Cir. 2018) ..................................................24, 34

*Cosmic Crusaders LLC v. Andrusiek*,
　　2023 WL 6889054 (Fed. Cir. Oct. 19, 2023)........................36, 37, 38

*Disney Enterprises Inc. v. Vid Angel, Inc.*,
　　869 F.3d 848 (9th Cir. 2017)............................................................41

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
　　2021 WL 3630225 (9th Cir. Aug. 17, 2021) ............................24, 34

*Exxon Shipping Co. v. Baker*,
　　554 U.S. 471 (2008)........................................................................53

*Faberge, Inc. v. Saxony Prod., Inc.*,
　　605 F.2d 426 (9th Cir. 1979)............................................................28

*Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*,
 2016 WL 7655740 (C.D. Cal. June 20, 2016) ...................................................39

*Federal Trade Commission v. Kutzner*,
 2016 WL 11811746 (C.D. Cal. Nov. 7, 2016)................................................42

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
 198 F.3d 1143 (9th Cir. 1999)......................................................22, 29

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
 98 F.4th 1180 (9th Cir. 2024)............................................................29

*Giggle, Inc. v. netFocal, Inc.*,
 856 F. Supp. 2d 625 (S.D.N.Y. 2012) ............................................27

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch Inc.*,
 676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd* 873 F.2d 985 (7th Cir. 1989) ........29

*In re Gilman*,
 887 F.3d 956 (9th Cir. 2018).............................................................55

*Golden Door, Inc. v. Odisho*,
 646 F.2d 347 (9th Cir. 1980)........................................................26, 27

*GoTo.com, Inc. v. Walt Disney Co.*,
 202 F.3d 1199 (9th Cir. 2000)............................................................18

*Greater Los Angeles Softball Associationn v. Ryan*,
 2017 WL 8292779 (C.D. Cal. Sept. 21, 2017) ...............................................47

*Grubhub Inc. v. Relish Labs LLC*,
 80 F.4th 835 (7th Cir. 2023)..............................................................32

*Halo Managment, LLC v. Interland, Inc.*,
 308 F. Supp. 2d 1019 (N.D. Cal. 2003)...........................................39

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
 736 F.3d 1239 (9th Cir. 2013).........................................................46

*Herbal Chef, LLC v. AFG Distribution, Inc.*,
 840 F. App'x 223 (9th Cir. 2021)......................................................33

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) .......................................................................41

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
68 F.4th 1203 (9th Cir. 2023) ................................................................24, 28

*Lahoti v. VeriCheck, Inc.*,
586 F.3d 1190 (9th Cir. 2009) .......................................................................33

*Levi Strauss & Co. v. Blue Bell, Inc.*,
632 F.2d 817 (9th Cir. 1980) .........................................................................19

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.2d 980 (9th Cir. 1999)...........52

*Longchamps, Inc. v. Eig*,
315 F. Supp. 456 (S.D.N.Y. 2012) .................................................................20

*Lopez v. Gap, Inc.*,
883 F. Supp. 2d 400 (S.D.N.Y. 2012) ............................................................27

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
454 F.3d 108 (2d Cir. 2006) ..........................................................................43

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)...................................................................43, 44

*Maynard v. City of San Jose*,
37 F.3d 1396 (9th Cir. 1994), *as amended* (Nov. 22, 1994) ...........................42

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) .........................................................................19

*Mortgage Electronic Registration Systems, Inc. v. Brosnan*,
2009 WL 3647125 (N.D. Cal. Sept. 4, 2009) ..................................................47

*National Customer Engineering Inc. v. Lockheed Martin Corp.*,
1997 WL 363970 (C.D. Cal. Feb. 14, 1997) ...................................................40

*NewRez v LLC v. Brosnan*,
2023 WL 2347441 (C.D. Cal. Jan. 30, 2023) ..................................................22

*Nutraceutical Corp. v. NutraChamps, Inc.*,
  2020 WL 6382042 (D. Utah Oct. 30, 2020) ....................................................24

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*,
  762 F.2d 1374 (9th Cir. 1985)......................................................................41

*Official Airline Guides, Inc. v. Gross*,
  6 F.3d 1385 (9th Cir. 1993)..........................................................................20

*OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*,
  897 F.3d 1008 (9th Cir. 2018)......................................................................31

*Pacific Sunwear of California, Inc. v. Kira Plastinina Style, Ltd.*,
  364 F. App'x 330 (9th Cir. 2010)..................................................................19

*Perfumebay.com Inc. v. eBay, Inc.*,
  506 F.3d 1165 (9th Cir. 2007)........................................................51, 52, 53

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
  204 F.3d 867 (9th Cir. 2000).........................................................................53

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ...................................................................54

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991).........................................................................47

*RSI Corp. v. IBM Corp.*,
  2012 WL 3277136 (N.D. Cal. Aug. 9, 2012) ................................................41

*RXD Media, LLC v. IP Application Devevelopment LLC*,
  986 F.3d 361 (4th Cir. 2021)...............................................................34, 35

*S.E.C. v. Platforms Wireless International Corp.*,
  617 F.3d 1072 (9th Cir. 2010) .......................................................................19

*Sengoku Works Ltd. v. RMC Int'l Ltd.*,
  96 F.3d 1217 (9th Cir. 1996).........................................................................57

*Sid Berk, Inc. v. Uniroyal, Inc.*,
  425 F. Supp. 22 (C.D. Cal. 1977)..................................................................44

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ........................................................... 31

*Social Technologies LLC v. Apple Inc.*,
    4 F.4th 811 (9th Cir. 2021) ........................................... 30, 36, 37, 38, 40, 57

*Southwest Voter Registration Educ. Project v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) (en banc) ............................................ 18

*Stanley v. University of Southern California*,
    13 F.3d 1313 (9th Cir. 1994) ........................................................... 42

*Stuhlbarg International Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................... 50

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    846 F. Supp. 2d 1063 (N.D. Cal. 2012) .......................................... 47

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Association*,
    465 F.3d 1102 (9th Cir. 2006) ......................................................... 41

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) (en banc) ................................... 22, 23

*U.S. Bank National Association v. Thunder Properties, Inc.*,
    2019 WL 2110512 (D. Nev. May 13, 2019) .................................... 55

*U.S. for Use & Benefit of Familian Northwest, Inc. v. RG & B Contractors, Inc.*,
    21 F.3d 952 (9th Cir. 1994) ............................................................. 19

*United States v. Idaho*,
    2022 WL 3442500 (D. Idaho Aug. 17, 2022) ................................. 42

*UV RML NL Assets, LLC v. Coulter Ventures, LLC*,
    2021 WL 5706870 (C.D. Cal. Oct. 22, 2021) ................................. 44

*Valley Forge Insurance Co. v. Zurich American Insurance Co.*,
    2011 WL 2748334 (N.D. Cal. July 14, 2011) ............................ 54, 55

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
    515 F. Supp. 3d 1061 (N.D. Cal. 2021) .......................................... 46

*Warner Bros. Entertainment v. Global Asylum, Inc.*,
 544 F. App'x 683 (9th Cir. 2013)......................................................51

*Yamaha International Corp. v. Hoshino Gakki Co.*,
 840 F.2d 1572 (Fed. Cir. 1988) .......................................................31

*Yellow Cab Company of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
 419 F.3d 925 (9th Cir. 2005) ....................................................21, 26

*Yelp Inc. v. Herzstock*,
 788 F. App'x 529 (9th Cir. 2019).....................................................42

*Zobmondo Entertainment, LLC v. Falls Media, LLC*,
 602 F.3d 1108 (9th Cir. 2010) .........................................................20

## Rules / Statutes

15 U.S.C. § 1116(a) ............................................................45, 50

37 C.F.R. § 2.41(a) .................................................................25

N.D. Cal. L.R. 7-3(d)(1).............................................................54

Fed. R. Civ. P. 59(e) ...................................4, 5, 15, 17, 19, 25, 53, 55, 56

Fed. R. Civ. P. 60...........................................4, 5, 15, 17, 19, 25, 53, 55, 56

## PRELIMINARY STATEMENT

Defendants-Appellants Open Artificial Intelligence, Inc. and Guy Ravine have appealed an order of the U.S. District Court for the Northern District of California (Gonzalez Rogers, J.) that preliminarily enjoins their use of "Open AI" and "Open.ai" based on their infringement of the "OpenAI" trademark owned by Plaintiff-Appellee OpenAI, Inc. ("OpenAI"). The preliminary injunction was justified, as shown by detailed evidentiary findings of secondary meaning, likelihood of confusion, and irreparable harm. It was buttressed by damning findings that Ravine's explanations for his conduct were not credible. Defendants have not come close to identifying any abuse of the district court's discretion or any other basis to overturn the district court's decision, let alone its denial of Defendants' improper request for a "re-do" after replacing their lawyers. This Court should affirm the district court's orders.

OpenAI first made public use of its OPENAI mark in December 2015, when it announced its founding and billion-dollar funding commitments. In the intervening years, OpenAI released a number of products, including a text-to-image generator named DALL·E and a chatbot called ChatGPT. In November 2022, in the wake of publicity surrounding the release of DALL·E, Defendants began making available a competing text-to-image generator (created by a third party) on a website with the URL www.open.ai that displayed the name "Open AI"—the same as

1

Plaintiff's mark, but with a space between "Open" and "AI." The resulting confusion was inevitable, as Defendants concede.

To end this confusion, OpenAI sued and sought a preliminary injunction. OpenAI provided evidence documenting its need for, and entitlement to, an injunction. This evidence reflected its continuous and substantially exclusive use of the "OpenAI" mark since 2015, more than one million users of its products by September 2022, and significant publicity about OpenAI, all of which supported its senior common law rights in the mark. OpenAI also offered significant evidence on the likelihood-of-confusion factors, including evidence of actual confusion, which Defendants did not dispute. Based on this evidence, the district court found that OpenAI is likely to succeed on its infringement claim and, accordingly, is entitled to a presumption of irreparable harm, which Defendants did not rebut.

The district court properly rejected Defendants' two primary challenges—*first*, their claim to senior rights, and *second*, that OpenAI unduly delayed in seeking relief. Defendants' asserted priority of rights was based on "uses" that were not *bona fide* uses in commerce required to establish trademark use, but merely landing pages that did not offer the claimed goods or services, and for which Defendants did not even claim actual users before December 2022. Thus, even if they had been *bona fide* trademark uses, Defendants lacked any plausible claim that they had developed secondary meaning in "Open AI" before Plaintiff. The timing of

2

Defendants' alleged use further supported the court's rejection of their delay argument.

Defendants' registration of "Open AI" on the Supplemental Register likewise does not establish their priority. As the district court recognized, registration on the Supplemental Register reflects no more than a registrant's attempt to develop trademark rights, and such registrations are not entitled to a presumption of validity or ownership. Further, Ravine had made material misrepresentations to the U.S. Patent and Trademark Office ("PTO") to obtain that registration, including by submitting a specimen of use in commerce that was not the result of *bona fide* use in commerce, but was instead content that had been cut and pasted from another website the day before he submitted the specimen. Defendants did not refute this evidence, either in their opposition papers or at the hearing, when the district court asked for their explanation. In fact, they conceded that they had copied the content the day before the PTO submission. They argued that the misrepresentations to obtain the registration did not matter, however, because they were trying to enforce only their common law rights, not any registered rights.

The district court was disturbed by Ravine's false statements under penalty of perjury. It declined to credit his assertions of use in commerce of "Open AI" before November 2022. Defendants' lack of credible evidence is alone sufficient to sustain the injunction. But it is not alone. In addition to Ravine's false and misleading

3

representations to the PTO, the record contains unrebutted evidence that casts further doubt on Ravine's unsupported statements, including evidence from the WayBack Machine and from a computer forensic expert. Defendants did not object to this evidence before the preliminary injunction issued.

The district court was thus well within its discretion to deny Defendants' request for a do-over with an evidentiary hearing and the submission of additional evidence, under the guise of a motion under Rule 59(e) and 60(b). As the court recognized, Defendants had originally denied the need for an evidentiary hearing and had chosen not to respond to the disturbing allegations about Ravine's false statements to the PTO and to the court itself. Defendants likewise could have earlier submitted all of the factual material they submitted with their motion—the same outside-of-the-injunction-record material on which most of their appeal rests.

Finally, Defendants' slow-motion pursuit of this appeal and a final resolution of this action belies their claim of irreparable harm. Defendants did not seek a stay pending appeal from either the district court or this Court. Nor did they seek to expedite the briefing of this appeal. And when, after entering the preliminary injunction, the district court offered a September 2024 trial, Defendants declined and requested instead that trial be held over a year later (in October 2025)—hardly the act of parties suffering irreparable harm.

For these reasons and as further discussed below, this Court should affirm the district court's orders.

## COUNTER-STATEMENT OF ISSUES

1.    Did the district court act within its discretion in concluding that OpenAI is likely to succeed on the merits of its trademark infringement claim?

2.    Did the district court act within its discretion in concluding that the equitable factors favor a preliminary injunction?

3.    Is the scope of the preliminary injunction, which is tailored to uses of OpenAI's mark that have caused actual confusion, appropriate?

4.    Did the district court act within its discretion in denying Defendants' motion under Rule 59(e) and Rule 60(b), which sought vacatur of the preliminary injunction based on evidence that was available at the time of the preliminary injunction hearing?

## COUNTER-STATEMENT OF THE CASE

### A.    OpenAI's 2015 Founding And Its OpenAI Mark

In December 2015, OpenAI announced its founding as an artificial intelligence research company. 1-ER-8 (citing 6-ER-1171). OpenAI's announcement was widely covered in national media, including in *The Wall Street Journal*, *The New York Times*, *USA Today*, *Bloomberg*, and *Financial Times*, amongst others. 1-ER-8; 6-ER-1161 (¶ 5); 6-ER-1175-1217.

5

Starting with its early product releases, such as OpenAI Universe, in December 2016, OpenAI has garnered significant, unsolicited media coverage and renown over its capabilities. *See, e.g.*, 7-ER-1285; 7-ER-1289. Since then, OpenAI has continued to develop and release numerous artificial intelligence products and services, including the OpenAI Five artificial intelligence, which in 2018 became the first artificial intelligence to beat human champions in an esports game; OpenAI's GPT-3 application programming interface in 2020; OpenAI's DALL·E text-to-image tool in 2021; and OpenAI's Whisper automatic speech recognition (ASR) system in 2022. *See* 7-ER-1285; 7-ER-1289; 8-ER-1668. These products and services have millions of users. 1-ER-8; 6-ER-1162-64 (¶¶ 6-9); 6-ER-1218-22; 6-ER-1230-33.

OpenAI's products achieved increasingly rapid success. For example, within nine months after launching GPT-3 in 2020, OpenAI had tens of thousands of developers building on its platform, and was used in more than 300 software applications from productivity and education to creativity and games. 6-ER-1110. OpenAI's demonstrated capabilities led to significant growth and investments. 7-ER-1342-45.

In March 2022, *Time* named OpenAI to its Top 100 Most Influential Companies of 2022. 7-ER-1317. By July 2022, over one million users had requested early access to OpenAI's DALL·E 2 text-to-image generator on OpenAI's website,

which prominently displayed OpenAI's mark on the top of the website. 6-ER-1220. By September 2022, OpenAI released DALL·E 2, as announced on its website prominently displaying the OpenAI mark, and more than 1.5 million users were already generating over 2 million images *per day* on OpenAI's website. *Id.*

## B. Defendants' Fraud On The PTO

Before November 2022, Defendants did not make available any artificial intelligence goods or services on its www.open.ai webpage. From 2015 to 2017, that webpage reflected a "coming soon" message that said "Announcement Will Be Made Soon." 1-ER-13 (citing 10-ER-2134-37). After 2017, and continuing into 2022, Defendants' homepage redirected users to *Plaintiff OpenAI's* website. 1-ER-13 (citing 10-ER-2138-45, 4-ER-604-24).[1]

Defendants, however, tried to make it appear otherwise. On December 11, 2015, the very day OpenAI's founding received national press coverage, Ravine

---

[1] Upon realizing that Defendants' website redirected visitors to Plaintiff's website, in February 2022, Plaintiff's CEO Sam Altman emailed Ravine, stating "[i]t looks like open.ai currently redirects to our website … would you be open to us acquiring the open.ai domain name and related IP rights from you?" 5-ER-953. Ravine did not deny that his website had been redirecting to Plaintiff OpenAI's website. 5-ER-952-53. Nor did he claim that any commercial activity had occurred on the website, that any community of users had engaged with the website, or that he had offered any goods or services in connection with "Open AI." *Id.* Instead, he invited OpenAI to pay millions of dollars to fund an academic collaboration that he was supposedly "gearing to launch." *Id.* When Altman asked Ravine for "more details about the academic collaboration and what [he] would be interested in from" OpenAI, Ravine never answered. *Id.*

7

applied at 10:32 p.m. to register "Open AI" with the U.S. Patent and Trademark Office ("PTO"). 1-ER-14 (citing 10-ER-2061-67). Ravine's application represented that he was using "Open AI" in commerce in connection with "a web site featuring technology that enables internet users to share documents, images and videos." 10-ER-2064. On its face, the specimen of use Ravine submitted to show actual use in commerce (a "coming soon" website landing page) did not support this representation, and the PTO rejected his specimen. 1-ER-15 (citing 10-ER-2068-87).

In response, Ravine submitted a substitute website specimen (10-ER-2093-94), attesting that it showed "use in commerce at least as early as the filing date of the application," *i.e.*, December 11, 2015 (*see* 10-ER-2090). But that submission was a sham. Despite claiming that the submission showed use in commerce as of December 2015, the submission reflected website posts created on September 26, 2016—the day before Ravine submitted it. 1-ER-15-16 (citing 10-ER-2103). Ravine concealed from the PTO the true date of those posts by submitting screenshots of undated posts from the website, rather than from the mobile version, which reflected the actual posting date. *Compare* 10-ER-2093 (submission with undated posts) *with* 10-ER-2103 (dated mobile version of same posts).

Ravine's substitute submission also misrepresented the nature of his actual use by fabricating the impression that the specimen reflected real third-party posts

8

on the website. The PTO has made clear that mock ups of products that do not reflect actual consumer use are not proof of use in commerce, and that submission of them as a specimen is fraudulent. 4-ER-725; 4-ER-743; 4-ER-749. Yet the posts shown on Ravine's specimen did not reflect genuine user conversation; they had been copied from prior third-party posts on an unaffiliated website, GitHub. *See* 10-ER-2054-55 (¶¶ 6-9) (overview of evidence of copied posts, citing 10-ER-2088-94; 10-ER-2095-101; 10-ER-2102-05; 10-ER-2106-17). Ravine engaged in this ruse to mislead the PTO into believing that his website had actual user dialogue, thereby overcoming the PTO's objection to his original website specimen because it did not show "the mark in actual use in commerce." 10-ER-2070.

With no reason to suspect Ravine's substitute specimen submitted under penalty of perjury was fraudulent, the PTO registered the mark on the Supplemental Register on August 1, 2017. 1-ER-16; 10-ER-2119. On June 30, 2023, Ravine purported to assign this registration to Defendant Open Artificial Intelligence, Inc. 1-ER-16 (citing 10-ER-2121-33).

### C. Defendants Sow Consumer Confusion

In 2023, following a FOIA request to the PTO, OpenAI learned that Ravine was attempting to prevent OpenAI's registration of the OPENAI mark. In connection with its ensuing investigation of Ravine's asserted trademark rights, OpenAI learned that, in November 2022, two months after OpenAI released its

9

DALL·E 2 text-to-image generator without a wait list, Defendants' website had begun to feature a third-party plugin for a competing text-to-image generator. 1-ER-13-14; 10-ER-2147-48 (November and December 2022 website), 10-ER-2150 (continued use of redesigned website in September 2023). Later, after OpenAI released its ChatGPT chatbot, Defendants created another page on their website (https://staging.open.ai) that appeared to offer a competing third-party chatbot that can process natural human language prompts and generate a response. *See* 6-ER-1163 (¶ 8); 10-ER-2178 (reflecting Defendants' webpage as of September 14, 2023, with a chatbot stating "[a]sk me anything and I'll respond with text").

One week before OpenAI sought a preliminary injunction, Defendants redesigned their website, moving their logo to the top left of the page and more closely reflecting OpenAI's website design. 1-ER-14; *see* 10-ER-2182 (Defendants' homepage); 10-ER-2235 (OpenAI's homepage). As the court noted, the "new website look[ed] remarkably like plaintiff's." 1-ER-14.

Defendants falsely associated themselves and their domain name with OpenAI and its products. Ravine asserted in his LinkedIn profile that he is the "Originator" of "OpenAI"—no space. 10-ER-2186. And Defendants created subdomains (sections of the primary "open.ai" domain) to mirror the most popular OpenAI subdomains. For example, after OpenAI began using the subdomain https://chat.openai.com for its ChatGPT chatbot (6-ER-1163 (¶ 8)), Defendants

created a confusingly-similar subdomain name, http://chat.open.ai, that redirects to Defendants' website homepage—even though that page does not provide "chat" functionality (10-ER-2180).

Unsurprisingly, Defendants' November 2022 introduction of access to an artificial intelligence product under the name "Open AI" on the open.ai webpage has caused actual consumer confusion. Visitors to Defendants' website have typed terms referring to *OpenAI's* products and services into Defendants' website, such as "chatgpt" and "chatgpt 4.0," clearly demonstrating their confusion. 1-ER-17 (citing 10-ER-2166-76). Social media users have posted about their confusion between OpenAI's website and Defendants' website. 1-ER-17 (citing 10-ER-2209-21). And others in the media and public, including sophisticated publishers, have similarly been confused; articles on the websites for *Forbes* and *The Telegraph* mistakenly link to *Defendants'* website when discussing *OpenAI* and its services. 1-ER-17 (citing 10-ER-2188-208). In addition, a consumer perception study, designed and overseen by Dr. Scott Swain, a Professor of Marketing and a Distinguished Fellow at Clemson University, confirmed that Defendants' use of "Open AI" causes confusion. 1-ER-17; 8-ER-1807-39.

After the preliminary injunction hearing, Defendants produced documents showing that numerous third parties who thought they were communicating with Plaintiff had, instead, reached out to Defendants in their confusion. 2-SER-44-90.

These third parties included actual and potential customers, as well as Plaintiff's business associates and those seeking to do business with it, including sophisticated parties, and their misdirected communications included confidential information, requests for account assistance, and business opportunities. *Id.*

### D. The Proceedings Below

#### 1. The Preliminary Injunction Hearing And Order

Plaintiff filed its complaint in August 2023 and moved for a preliminary injunction in late September 2023. After the motion was briefed, the district court asked the parties if an evidentiary hearing was needed. 4-ER-560. Both parties said it was not. 4-ER-560-61; 1-ER-3.

During oral argument on the motion, the court "gave defendants' counsel an opportunity to respond to" what the court described as "serious, troubling allegations against defendant Ravine," including his misrepresentations to the PTO in connection with his trademark application. *See* 1-ER-3; 3-ER-499-500. In response, Defendants admitted that their specimen did not reflect the claimed use in commerce. *See* 3-ER-493-94 ("we agree that what is attached to the supplemental use submission … was not something that we can show existed as of December 2015"). But Defendants argued that these facts were irrelevant because they are "not trying to enforce a USPTO trademark registration" in this case, and that they "are simply enforcing common law rights." 3-ER-490.

Unpersuaded by Defendants' arguments about their asserted common law rights, the district court granted a preliminary injunction in a comprehensive 21-page decision and order.  1-ER-7-27.  The court ruled that OpenAI was likely to succeed on the merits of its trademark infringement claim because it was likely to demonstrate that it had priority in a protectable mark and confusion was likely—indeed, undisputed.  1-ER-18-24, 1-ER-3-5.  After analyzing evidence concerning OpenAI's use of its OpenAI mark, the court found that Plaintiff is likely to prove that it was a *bona fide* user of its mark and that its mark had acquired secondary meaning by at least September of 2022, if not earlier.  1-ER-21-22, 1-ER-2 (errata).  As the court noted, "Plaintiff's trademark is associated with perhaps the most renowned artificial intelligence tools currently in use and, quite quickly, became ubiquitous."  1-ER-7.

The court also found that OpenAI had "presented credible evidence that defendants did not use their mark in commerce, if at all, until recently," and that "[m]uch of this evidence, presented in plaintiff's opening brief, simply went unanswered in defendants' opposition."  1-ER-22.  The court stated that "the current record paints a troubling picture of defendant Ravine's representations to the USPTO and this Court about the true extent of his use of the disputed mark."  1-ER-23.  It noted that the evidence Defendants relied on at the hearing to support their alleged "history of use" was, "[a]t most … circumstantial evidence that defendant

13

Ravine was considering creating an open-sourced AI platform," and that "[e]ven if the Court were to credit defendants' testimony about when and why they used their mark, it still does not establish that they have a senior claim." 1-ER-22-24.

The district court ruled that Defendants did not overcome the rebuttable statutory presumption of irreparable harm. 1-ER-24-26. Defendants' sole argument against irreparable harm was OpenAI's supposed delay, which the court rejected because "substantial evidence" showed that Defendants had no users of a competing product before November 2022 and that Plaintiff OpenAI did not unreasonably delay in seeking an injunction. 1-ER-26. Given these findings, the court found that the balance of equities and public interest favor a preliminary injunction. *Id.*

The district court entered an injunction that is functionally identical to the one in OpenAI's proposed order. *Compare* 1-ER-26-27 (order) *with* 3-ER-550-51 (amended proposed order).

## 2. Defendants' Request For An October 2025 Trial Date

Almost a month after issuing the injunction, the district court held a further case management conference. *See* 1-SER-2-3. Although the court stated that Defendants' proposed schedule, which sought a trial date of September 2025, was "very long," during the conference Defendants requested an even longer schedule,

14

and ultimately, the Court set trial for October 2025.  3-ER-375; 3-ER-355; 3-ER-357-58; 1-SER-74.[2]

### 3. The Order Denying Defendants' Motion Under Rule 59(e) And Rule 60(b)

Two days after the case management conference, Defendants sought vacatur of the preliminary injunction under Rule 59(e) or Rule 60(b), submitting a 27-paragraph declaration from Ravine with five exhibits, along with two declarations from third parties, a declaration from one of Defendants' attorneys, and a 12-page declaration from a new purported expert accompanied by eight exhibits. *See* 2-ER-42-255; 3-ER-257-59.  The district court denied the motion, which it viewed as seeking a "re-do," noting that "[a]ll of the evidence defendants put forth *now* existed in November 2023" and that Defendants had made a "strategic decision" to present the evidence they did.  1-ER-3-4 (emphasis in original).  It rejected Defendants' contention that there was a mistake of law and clarified that a supposed "mistake of fact" was a typo that was not material.  1-ER-3-4; 2-ER-32.

During the hearing on Defendants' motion, the court again offered "to significantly expedite the resolution of this case by holding trial in September 2024" in light of Defendants' claim that the preliminary injunction was irreparably harming

---

[2]  Defendants' request for an October 2025 trial was even farther out than the July 2025 trial they had requested before the hearing on the preliminary injunction motion—which was nine months later than the November 2024 trial OpenAI originally proposed.  3-ER-357.

their business.  1-ER-5; *see* 2-ER-33.  But "Defendants refused and instead asked that trial be held October 13, 2025, over a year later."  1-ER-5.

### 4.    Defendants' Appeal

After filing their notice of appeal, Defendants sought and obtained an extension of time to file their opening brief.  CA9 Dkts._8, 10.  They did not seek a stay of the preliminary injunction pending appeal from the district court or from this Court; nor did they seek to expedite the briefing schedule on their appeal.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's orders granting a preliminary injunction and denying Defendants' request for a re-do following their change of strategy.

*First*, the district court was correct, and well within its discretion, in concluding that OpenAI is likely to succeed on the merits of its trademark infringement claim.  The court properly found that OpenAI is likely to show that it had protectable trademark rights in OPENAI by September 2022, before Defendants' website featured a text-to-image generator.  The court also properly rejected Defendants' analogous use arguments, which offered no evidence that their pre-September 2022 activities created consumer association between the name "Open AI" and Defendants.  And the court properly rejected Defendants' contention that OpenAI had been dilatory in seeking relief, as the evidence showed Defendants

16

only began offering a competing product in November 2022. The court made all of these rulings after both sides had agreed an evidentiary hearing was unnecessary.

*Second*, the district court acted well within its discretion in concluding that the equitable factors favor a preliminary injunction. In addition to the statutory presumption of irreparable harm given OpenAI's likelihood of success, OpenAI also presented substantial evidence of actual irreparable harm, including loss of control over its reputation and goodwill due to inevitable association with Defendants. In contrast, Defendants presented no evidence of harm, and declined the Court's invitation to set a trial date this year, even after the preliminary injunction was issued.

*Third*, the district court acted within its broad equitable authority in granting the specific injunction that OpenAI had requested. Defendants forfeited any objection to the injunction's scope by not objecting to OpenAI's virtually identical proposed injunction or proposing alternative language. Defendants have failed to identify any non-confusing speech that the injunction restricts. The injunction is properly tailored to the infringing uses that have caused actual confusion, such as the Open.ai domain name.

*Finally*, the district court properly exercised its discretion in denying Defendants' motion to vacate the preliminary injunction. Neither Rule 59(e) nor Rule 60(b) provides a basis for setting aside the injunction. Defendants' failure to

submit available evidence in opposing the injunction was a deliberate strategic decision, not excusable neglect. The court had no obligation to provide Defendants with a do-over when their initial strategy of submitting a single declaration with 24 exhibits failed, especially where Defendants' additional evidence and arguments would not have affected the court's determination that their pre-injunction activities were not genuine trademark use.

## STANDARD OF REVIEW

This Court "review[s] the district court's decision to grant or deny a preliminary injunction for abuse of discretion." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc). This "review is limited and deferential." *Id.* "The grant of a preliminary injunction will be reversed only when the district court has based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 (9th Cir. 2000). "As to findings of fact, [this Court] may affirm the district court as long as the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision, or if there can be no genuine dispute about the omitted findings." *Id.* (quotations omitted).

This Court "afford[s] particular deference to the district court's findings of facts," including on secondary meaning and likelihood of confusion, which "are reviewed only for clear error." *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F.

App'x 633, 635 (9th Cir. 2013) (affirming trademark infringement preliminary injunction); *see, e.g.*, *Pac. Sunwear of Cal., Inc. v. Kira Plastinina Style, Ltd.*, 364 F. App'x 330, 331 (9th Cir. 2010) (affirming trademark infringement preliminary injunction where no clear error in finding likelihood of confusion); *Levi Strauss & Co. v. Blue Bell, Inc*., 632 F.2d 817, 821 (9th Cir. 1980) (affirming preliminary injunction where no clear error in finding secondary meaning); *see also Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) ("finding of secondary meaning may be reversed only upon a showing of clear error").

"Motions for relief pursuant to Rule 60(b) are reviewed for abuse of discretion" and a "denial of relief pursuant to Rule 59(e) is construed as one denying relief under Rule 60(b), and is likewise reviewed for abuse of discretion." *U.S. for Use & Benefit of Familian Nw., Inc. v. RG & B Contractors, Inc.*, 21 F.3d 952, 954 (9th Cir. 1994); *see S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) ("We review the denial of a motion for reconsideration [brought under Federal Rules of Civil Procedure 59(e) and 60(b)] for an abuse of discretion."). "Abuse-of-discretion review is highly deferential to the district court." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012). This Court "must uphold a district court determination that falls within a broad range of permissible conclusions in the absence of an erroneous application of law." *Id.* (quotations omitted).

## ARGUMENT

### I. THE DISTRICT COURT WAS WELL WITHIN ITS DISCRETION TO CONCLUDE THAT OPENAI IS LIKELY TO SUCCEED ON THE MERITS OF ITS TRADEMARK INFRINGEMENT CLAIM

#### A. OpenAI Is Likely To Succeed In Showing Senior, Protectable Trademark Rights

Trademarks are protectable only if "distinctive." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). A descriptive mark is protectable "if it has acquired distinctiveness," known as secondary meaning, "in connection with the applicant's goods in commerce." *Id.* (quoting 15 U.S.C. § 1052(f)).

"A mark acquires secondary meaning if consumers associate the mark with a particular source." *Off. Airline Guides, Inc. v. Gross*, 6 F.3d 1385, 1391 (9th Cir. 1993) (explaining "Steak & Brew" was "descriptive of a restaurant's fare" but had "secondary meaning … because customers associate the mark with a particular restaurant chain") (citing *Longchamps, Inc. v. Eig*, 315 F. Supp. 456, 458 (S.D.N.Y. 1970)). Because "secondary meaning merely establishes the minimum threshold for trademark status," it is a far less stringent standard than the antidilution standard of 15 U.S.C. § 1125(c)(2)(A) for "famous" marks, which requires a mark be "widely recognized by the general consuming public." 3 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 24:104 (5th ed.); *see Avery Dennison Corp. v. Sumptom*, 189 F.3d 868, 876 (9th Cir. 1999) (noting dilution involves a "higher

20

standard" than secondary meaning).  In assessing secondary meaning, courts weigh: (1) whether actual purchasers associate the mark with the producer, (2) the degree and manner of advertising, (3) the length and manner of the mark's use, and (4) whether that use has been exclusive.  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc*., 419 F.3d 925, 930 (9th Cir. 2005).

The district court was well within its discretion to conclude that OpenAI will likely prove protectable trademark rights, including that secondary meaning existed before Defendants began making available a competing artificial intelligence product in November 2022.

### 1. OpenAI Had Protectable Trademark Rights No Later Than September 2022

#### (a) The "OpenAI" Mark Acquired Secondary Meaning By September 2022

The district court correctly concluded that OpenAI is likely to establish that it had acquired secondary meaning in the "OpenAI" mark by no later than September 2022, when OpenAI lifted the invitation-only restriction on access to its DALL·E 2 image generator.  1-ER-21-22; *see* 6-ER-1162 (¶ 7); 6-ER-1218-22.

*First*, the district court correctly determined that OpenAI was likely to show that, by September 2022, users associated OpenAI with a single source.  1-ER-22. During the first nine months of 2022, OpenAI was named one of *Time*'s "Top 100 Most Influential Companies of 2022" (7-ER-1317), had over 1.5 million people

21

actively using its newest DALL·E 2 release to generate over 2 million images per day (6-ER-1219), and had significant growth and investments (7-ER-1343). This evidence of the "amount of sales and number of customers" and "established place in the market" supports secondary meaning. *See, e.g.*, *NewRez v LLC v. Brosnan*, 2023 WL 2347441, *4 (C.D. Cal. Jan. 30, 2023) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999)). In *NewRez*, the court granted a preliminary injunction where the evidence indicated secondary meaning in the name "Shellpoint Mortgage Service," including that the plaintiff had "served more than 1.7 million loans under the name." *Id.* at *4.

The evidence here is at least as compelling. Within just a matter of months, and before September 2022, OpenAI served more than 1.5 million customers (who actively created over 2 million images per day) using OpenAI's DALL·E 2 product. 7-ER-1317. Further, unlike cases Defendants cite involving product-configuration trade dress (*e.g.*, Br. 33), for which consumer demand cannot automatically be associated with source-identification (*e.g.*, *Cicena Ltd. v. Columbia Telecom. Grp.*, 900 F.2d 1546, 1574, 1551 (Fed. Cir. 1990)), OpenAI's products were all offered in connection with the "OpenAI" name (1-ER-8; 6-ER-1164-66 (¶¶ 11-16)).

The substantial evidence of actual confusion here is additional proof that consumers associate the OpenAI mark with a single source, not a product category. *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th

Cir. 1985) (en banc) ("Secondary meaning can also be established by evidence of likelihood of confusion."); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) ("the law clearly establishes that actual confusion is an indicium of secondary meaning") (quotations omitted). In *Transgo*, for example, secondary meaning was supported by "[i]nstances of actual confusion in the mind of the relevant market" and the "confusing similarity" of the defendant's later-introduced product sold under the mark, which suggested the defendant "attempted to capitalize on the secondary meaning of [the mark] in order to obtain an advantage from the good will built up by [the plaintiff]." *Transgo*, 768 F.2d at 1016.

Here, the district court's findings of confusion similarly support the existence of secondary meaning. *See* 1-ER-17 (finding the "overlap between the marks has misled customers"). These findings include that consumers visited Defendants' website looking for OpenAI's products, that over half of consumers surveyed about the parties' websites were confused, and that even sophisticated publishers "talked about plaintiff while linking to defendants' … website." 1-ER-17.

Moreover, as the district court found, the evidence supported an inference that Defendants sought to capitalize on the secondary meaning in the OpenAI mark by offering confusingly similar products using the "Open AI" name. *See* 1-ER-13-14 (finding Defendants added a text-to-image plugin to their website after OpenAI released its DALL·E 2 text-to-image generator and "redesigned" their website to

23

"look[] remarkably like plaintiff's" website); *see Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214 (9th Cir. 2023) ("proof of copying strongly supports an inference of secondary meaning.") (quotations and brackets omitted).

Defendants cite no authority for their argument (Br. 31) that the absence of a secondary meaning survey is "dispositive." Nor could they, as that is not the law. *E.g.*, *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc*., 2021 WL 3630225, at *1 (9th Cir. Aug. 17, 2021) ("Consumer survey evidence is not required [to establish secondary meaning].")*; see also, e.g., Converse, Inc. v. Int'l Trade Comm'n,* 909 F.3d 1110, 1123 (Fed. Cir. 2018) ("lack of survey evidence of secondary meaning … is a neutral factor favoring neither party"). Indeed, secondary meaning "most often is[] proven by circumstantial evidence." 2 McCarthy § 15:30.

Proving secondary meaning through circumstantial evidence is also practical, as plaintiffs rarely will have performed secondary meaning surveys *before* becoming aware of defendants' allegedly harmful activity. *See Nutraceutical Corp. v. NutraChamps, Inc.*, 2020 WL 6382042, *5 (D. Utah Oct. 30, 2020) ("it is unrealistic to expect Plaintiffs to have paid for a secondary meaning survey to be conducted years ago just in case a competitor might infringe on their trademarks or trade dress at some point in the future"). And trademark registration regulations make clear that a survey is not required even to prove acquired distinctiveness for obtaining a

registration; rather, applicants may submit any "appropriate evidence tending to show that the mark distinguishes [applicant's] goods," including "evidence showing duration, extent, and nature of the use in commerce," as well as "letters or statements from the trade or public," 37 C.F.R. § 2.41(a)—just as OpenAI did below.

Last, Defendants' reliance on the new evidence that they had presented for the first time in connection with their Rule 59(e) and Rule 60(b) motion does not show that the district court abused its discretion in issuing the preliminary injunction. For example, Defendants cite Google Trends data to argue that OPENAI did not acquire secondary meaning. Br. 35. Defendants offered that data only after the preliminary injunction issued. *See* 2-ER-63 (citing 2-ER-218, 2-ER-240). Even if it were properly considered (it is not), Defendants' characterization of it is misleading. The data compares searches of OpenAI-related terms *relative to one another* (*see* 2-ER-63)—not in absolute terms, or even relative to the market. That "ChatGPT" had more searches relative to "OpenAI" says nothing about the secondary meaning of "OpenAI." *Compare* Br. 35 (arguing "ChatGPT" had "10 times the amount of interest as 'OpenAI'") *with* 6-ER-1264 (Plaintiff's evidence showing "OpenAI" had 4.7 million searches in a single month). Further, the timeframe Defendants selected for this data—August 2022 to March 2024—is wrong. The relevant period is December 2015 to September 2022—the period in which secondary meaning was acquired.

*Second*, the district court properly found that OpenAI was likely to establish the second *Yellow Cab* factor based on OpenAI's widespread social media advertising and media coverage. *See* 1-ER-22 (finding likelihood of success as to OpenAI's "extensive use of the trademark in advertising its products"). These are powerful indicators of secondary meaning. *See, e.g.*, *Yost*, 92 F.3d at 822; *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 350-51 (9th Cir. 1980). As the district court found, OpenAI has advertised its mark in association with its products and services "on its website, social media, and marketing." 1-ER-8; *see, e.g.*, 6-ER-1269, 6-ER-1271, 6-ER-1280 (social media accounts with millions of followers). Moreover, from its first day, OpenAI received "considerable unsolicited media coverage," with features in national publications like *The New York Times*, *The Wall Street Journal*, and *USA Today*, among others. 6-ER-1175-1217. This unsolicited media coverage has regularly referred to "OpenAI" in headlines, demonstrating the source-identifying function of the name. 6-ER-1175-1217; 7-ER-1283-1579; 8-ER-1581-1637.

The "extensive media coverage" that justified affirming the finding of secondary meaning in "Golden Door" as a trademark for the plaintiff's spa supports affirmance here. *Golden Door*, 646 F.2d at 351. The spa's opening "was accompanied by wide publicity in California newspapers" and thereafter "articles about the spa have appeared in San Francisco Bay Area newspapers and in several

national magazines," and "the founder and president of Golden Door, Inc., has appeared both in person and on television on behalf of the spa." *Id.* at 349. Similarly, OpenAI has received significant national media attention in major publications across the country, including on the day of its founding, and its founders has been featured in numerous articles in connection with OpenAI. 6-ER-1190; 7-ER-1283-1579; 8-ER-1581-1637. As in *Golden Door*, this widespread media coverage supports the district court's secondary meaning finding. *See* 646 F.2d at 350-51.

The two district court decisions Defendants cite regarding media coverage (Br. 37) cast no doubt on this conclusion. Those cases involved much less extensive media coverage (*i.e.,* "cursory mentions and brief blurbs"), *Giggle, Inc. v. netFocal, Inc.*, 856 F. Supp. 2d 625, 632 (S.D.N.Y. 2012), or coverage consisting merely of images, with no mention of the plaintiff or his company in connection to the apparel worn by artists in the published photographs or video, *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 427 (S.D.N.Y. 2012).

Defendants also err in asserting that articles published in 2023 are not relevant to the secondary meaning analysis here (Br. 35-36). Even if OpenAI has to show secondary meaning before November 16, 2022, evidence after that date is still relevant as circumstantial proof that OpenAI's mark achieved secondary meaning earlier. "A business's reputation does not arise overnight," and later evidence "has

at least some tendency to make it more probable that the [business] had a good reputation and that, earlier in the year, a significant quantity of the consuming public was aware of the Plaintiff's mark." *165 Park Row, Inc. v. JHR Dev., LLC*, 2013 WL 6384819, *2 (D. Me. Dec. 6, 2013) (quotations omitted) (rejecting defendant's argument that news articles and other evidence created after relevant secondary meaning date were not relevant); *see Faberge, Inc. v. Saxony Prod., Inc*., 605 F.2d 426, 428 (9th Cir. 1979) (holding district court did not clearly err by basing "its finding of secondary meaning upon a 1974 consumer survey incapable of gauging public recognition of Brut as of 1970").

*Third*, the district court properly concluded that OpenAI was likely to show continuous use of its mark since its December 2015 founding—nearly seven years before Defendants' November 2022 activity.  1-ER-22 (concluding that OpenAI had demonstrated a likelihood of showing "use of the trademark since December 2015").  This includes its use with the release of its software platform Universe in 2016, its GPT-3 application programming interface in 2020, its first DALL·E image generator in 2021, and its DALL·E 2 image generator in 2022.  1-ER-21.  OpenAI's length and manner of use is highly probative of secondary meaning.  Indeed, even in trade dress cases, "substantial and continuous use of a mark in commerce for five years is *prima facie* evidence of secondary meaning."  *Jason Scott Collection*, 68 F.4th at 1216.  Contrary to Defendants' assertion (Br. 41-42), the district court's

28

consideration of Universe was not error, as OpenAI provided evidence of Universe's 2016 release in its moving papers (7-ER-1284) and argument about Universe at the hearing (*see* 1-ER-21). *See, e.g.*, *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1189-90 (9th Cir. 2024) (evidentiary rules "do not strictly apply in the preliminary injunction context").

Defendants' suggestion that the duration of Plaintiff's use of the OpenAI mark was too short for it to acquire secondary meaning (Br. 32) mischaracterizes the law—and ignores the facts. Defendants rely on pre-2000 cases where evidence of use was insufficient to prove secondary meaning on far different facts. Br. 32 (citing *G. Heileman Brewing Co., Inc. v. Anheuser-Busch Inc*., 676 F. Supp. 1436, 1493 (E.D. Wis. 1987), *aff'd* 873 F.2d 985 (7th Cir. 1989) (three weeks of exclusive use), *Braun Inc. v. Dynamics Corp. of Am*., 975 F.2d 815, 826 (Fed. Cir. 1992) (eighteen months of use), and *Filipino Yellow Pages*, 198 F.3d at 1152 (six years of non-exclusive use)). But there is no bright line required minimum, particularly given how the scope and volume of modern communications and marketing differ from those in the cases Defendants rely on from the last century. *See* 2 McCarthy § 15:56 ("older precedent, which spoke of acquiring secondary meaning in terms of years, must be translated into the days and weeks"; "the Internet has made it easier than ever to reach millions of people around the globe in a matter of seconds"). Not only do the cases Defendants cite contain no analogous facts concerning the volume of

users and publicity that accompany OpenAI's use, but none of them involves substantially exclusive use that surpasses the five-year threshold after which distinctive meaning may be presumed.

*Fourth*, the district court properly concluded that OpenAI was likely to show its use of its mark was substantially exclusive. *See* 1-ER-22 (concluding OpenAI "is likely to prove that its use of the claimed trademark was exclusive"). Defendants presented no evidence of any third party using "OpenAI" for similar artificial intelligence products or services.

Further, as the district court correctly found, "defendants did not use their mark in commerce, if at all, until recently." 1-ER-22; *see* 1-ER-22 ("plaintiff's use of the mark was likely substantially exclusive given the significant and unrebutted evidence … that defendants' mark was not in commercial use"). Defendants' pre-November 2022 activities amounted to little more than registering a domain name, posting a "coming soon" page, and redirecting to OpenAI's site. 1-ER-13. Those efforts did not constitute *bona fide* use in commerce or interfere with OpenAI's exclusivity. *See, e.g.*, *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 819 (9th Cir. 2021) (concluding that pre-launch activities, including maintaining a website for two years, early-stage business planning, a $100,000 internal investment, and soliciting outside investors, did not constitute a *bona fide* use in commerce).

**(b)    Defendants' Burden-Of-Proof Arguments Fail**

Unable to refute the foregoing, Defendants try to ratchet up OpenAI's burden to show secondary meaning, but they cite no decision of this Court imposing a "heavy burden" on plaintiffs to show secondary meaning by anything other than a preponderance of the evidence.    Br. 23.    This Court has repeatedly held a determination of validity and secondary meaning requires only a preponderance of the evidence, *see, e.g.*, *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc*., 897 F.3d 1008, 1022 (9th Cir. 2018), and a preliminary injunction can be based on a plaintiff's "fair chance" of proving secondary meaning, *see, e.g.*, *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1422-23 (9th Cir. 1984).

Disregarding this Court's precedent, Defendants look to the Federal Circuit's decision in *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572 (Fed. Cir. 1988) (Br. 24), but it likewise does not support a heightened standard for secondary meaning on a preliminary injunction motion.    There, the Federal Circuit rejected the registration opposer's arguments that the applicant needed to prove secondary meaning in its guitar head designs by clear and convincing evidence.    *Id.* at 1581.    It further noted that "[i]n most oppositions to registrations under Section 2(f) [for acquired distinctiveness], prevailing opposers have presented some evidence that the mark *has not* acquired distinctiveness, such as *others' use* of the proposed mark or similar marks."    *Id*. (emphases added).

31

The Federal Circuit acknowledged that the opposer's "evidence consists of testimony and documents indicating that it and at least three other guitar manufacturers utilized guitar heads 'like' or 'similar to' those used by [the applicant]." *Id*. Nonetheless, it found that, "while the record is lacking in direct evidence of consumer testimony or perceptions as to whether the specific guitar heads employed by [applicant] function as significant indications of source, the record is also without any evidence of real substance to the contrary." *Id*. at 1583. Accordingly, the court held, "we cannot deem clearly erroneous the board's finding that [applicant's] 'peg head designs have acquired the requisite secondary meaning for registration.'" *Id.* Here, Defendants have offered *no* evidence of "commonality" of "OpenAI" as a designation for goods and services, and their arguments challenging the sufficiency of Plaintiff's evidence are similarly ineffective to demonstrate an abuse of discretion.

Contrary to Defendants' assertions (Br. 23, 25), Plaintiff's "OpenAI" mark has never been "found" to be "highly descriptive" "[i]n this case"—or by a final PTO decision. Rather, Defendants' argument (Br. 25) rests on *non-final* Office Action letters from PTO examiners. *See* 6-ER-1091. The district court was well within its discretion to reach a determination different from those preliminary assessments. *See Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 850 (7th Cir. 2023) (the district court did not clearly err in giving PTO office action "little weight"

because it was only "preliminary," not "conclusive"). The PTO's Office Actions were "rendered less persuasive still by the fact that the Patent Office did not have before it the great mass of evidence which the parties have since presented" in court. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). Indeed, the PTO invited OpenAI to submit "additional evidence of acquired distinctiveness, such as verified statements of long-term use," for further evaluation. 6-ER-1091. That was precisely the type of evidence that was before the district court, along with other evidence not before the PTO, such as evidence of actual confusion and Defendants' efforts from 2022 onward to copy OpenAI's specific use cases. 6-ER-1164-66 (¶¶ 11-16); 1-ER-17 (citing 10-ER-2188-208); 10-ER-2209-21; 10-ER-2166-76, 1-ER-13-14.

Neither decision Defendants cite regarding deference to the PTO (Br. 25) holds otherwise. Rather, both refer to *final* PTO decisions *to register* a mark as distinctive as generally worthy of deference in assessing distinctiveness of a similar mark for similar goods and services. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009) (relying on registration of similar mark as distinctive); *Herbal Chef, LLC v. AFG Distribution, Inc.*, 840 F. App'x 223, 224 (9th Cir. 2021) (not relying on registration of similar mark because the goods and services were different). Thus, Defendants fail to identify any error with the district court's determination that Plaintiff is likely to satisfy its burden on secondary meaning.

### 2. Defendants Did Not Make Any Relevant Use Before September 2022

#### (a) Defendants Did Not Make Relevant Trademark Use Of Their Mark Until At Least November 2022

The district court also properly found that OpenAI is likely to succeed in showing it achieved secondary meaning in its OPENAI mark before Defendants made any relevant use of their mark. 1-ER-22 (finding Defendants' website inoperative or lacking in users until November 16, 2022). In a priority dispute over a mark requiring secondary meaning, a plaintiff must show its mark acquired secondary meaning before the defendant's first use in connection with allegedly infringing goods or services. *See, e.g.*, *RXD Media, LLC v. IP App. Dev. LLC*, 986 F.3d 361, 369, 371 (4th Cir. 2021) (citing *Converse, Inc.*, 909 F.3d at 1116 ("In any infringement action, the party asserting trade-dress protection must establish that its mark had acquired secondary meaning before the first infringing use by each alleged infringer.")); *Eko Brands*, 2021 WL 3630225, at *1 ("The district court did not err in finding that the EKOBREW mark attained secondary meaning prior to the alleged infringement.") (citing same).

For example, in *RXD*, the accused infringer first used the "iPad" mark for a website for making simple, "notepad" lists three years before Apple introduced the iPad. 986 F.3d at 371. "The website did not result in any commercial success for RXD." *Id.* at 366. Later, after Apple had acquired secondary meaning in its "iPad"

34

mark, the accused infringer revised its website, still using the "iPad" mark, but offering expanded services like "the ability to upload photographs, videos, music, and documents." *Id.* at 367. The accused infringer opposed Apple's summary judgment motion, arguing its later use was not infringing because it began using the descriptive "iPad" mark before Apple acquired secondary meaning in it. *Id.*

The Fourth Circuit rejected RXD's argument, explaining that once Apple had acquired secondary meaning, the accused infringer was not free to expand its prior use of the "iPad" mark—for which the accused infringer never acquired secondary meaning—in a manner that infringed Apple's protectable mark. 986 F.3d at 369, 371. As the court explained, "even if we were to assume that RXD was the 'first user' of the mark in 2007, its wholly altered use of the mark on its 'ipadtoday.com' website in 2016, on the heels of Apple's commercial success in releasing the 'iPad' device, would not be entitled to protection." *Id.* at 371. Even though "trademark law generally provides 'first users' with protection to continue using a mark in the manner that was legal when first used, the law does not protect or permit a 'first user's expansion beyond its original product line into an area occupied by an 'intervening junior user' who has established its own rights in the mark." *Id.*

Just as in *RXD*, where the defendant's expanded use of the "iPad" mark to offer competing services constituted infringement despite a prior use in commerce, even if Defendants' prior use here had constituted a *bona fide* use in commerce of

the OPEN AI mark before November 2022 (which it did not, *e.g.*, 1-ER-22), the earlier use was so different from their November 2022 use in connection with a competing image generator (1-ER-22) that Defendants' post-November 2022 use infringes the intervening rights OpenAI acquired in the OPENAI mark.

### (b) Defendants Did Not Have Analogous Trademark Use Before September 2022

The district court was well within its discretion to reject Defendants' analogous trademark use argument, which was supported by no evidence that Defendants used "Open AI" before September 2022 "in public in a manner that creates an association among *consumers* between the mark and the mark's owner." *Soc. Techs.*, 4 F.4th at 817-18 (emphasis added).

This Court considers "the totality of the circumstances to determine whether the 'use in commerce' requirement has been satisfied so as to establish rights under the Lanham Act." *Soc. Techs.*, 4 F.4th at 818. "Non-sales activities are relevant where they may indicate whether a good or service has been adequately and publicly used and displayed in commerce." *Id.* "A mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Id.* at 817-18 (quotations omitted); *cf. Cosmic Crusaders LLC v. Andrusiek*, 2023 WL 6889054,

*3 (Fed. Cir. Oct. 19, 2023) ("Analogous uses are those which create an association in the minds of the purchasing public between the mark and the petitioner's goods").

*First*, the district court correctly rejected this argument based on lack of record evidence supporting Defendants' position. *See* 1-ER-24 ("defendants must demonstrate that the mark has become associated with them …. Defendants have not done so"). As the court further explained in denying vacatur of the preliminary injunction, "the record before it did not demonstrate that defendants' use of the disputed trademark, technical or analogous, was *bona fide*." 1-ER-4. Defendants ignore (Br. 48-50) this analysis.

*Second*, Defendants cite no evidence that their use of "Open AI" created any association among *consumers* between the mark and Defendants. Their contention that Ravine met with *executives* in the artificial intelligence field in 2015 (Br. 48-50) is insufficient to create association in the minds of the *purchasing public* and establish priority. At most, that evidence shows an "investor presentation outlining [plaintiff's] business plan" and "unsuccessfully solicit[ing] investors," which this Court has held are insufficient to establish analogous use. *Soc. Techs.*, 4 F.4th at 814, 819-20; *see Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1100-01 (N.D. Cal. 2019) (rejecting analogous use claim: "GM's communications with potential partners … merely show that GM was trying to find more partners with whom to work to ultimately target the appropriate

segment of the public. This looks more like 'mere preparation' to use the MAVEN GIG mark in commerce, which is not sufficient").

Likewise, neither Defendants' maintenance of a website nor their efforts to obtain a registration on the Supplemental Register (Br. 48-49) are sufficient to create association in the minds of the purchasing public. *See, e.g.*, *Soc. Techs.*, 4 F.4th at 819 ("maintenance of a website containing promotional videos, early stage business planning, a single internal $100,000 investment, and the unsuccessful solicitation of any external investors" after filing application for trademark registration with PTO "was not sufficiently public to establish trademark rights"); *accord Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1160 (9th Cir. 2001) ("[party's] mailing of the 35,000 post cards, which generated 128 responses to its 800 number and no sales, cannot be considered a first use under the law set out above").

*Finally*, none of Defendants' cited cases (Br. 48-50) are apposite, let alone binding on this Court. In *Andrusiek*, the Federal Circuit concluded in a nonprecedential decision that the Trademark Trial and Appeal Board did not abuse its discretion in finding analogous use. 2023 WL 6889054. The Board had relied on "multiple news and magazine articles associating CAPTAIN CANNABIS with Andrusiek's comic books, in periodicals whose apparently-undisputed readership totaled approximately 750,000 people per month," as well as "extensive public usage" of the term, including multiple trade shows and conventions at which

38

materials using the mark were distributed, as well as sales of "420" comic books that included the "Captain Cannabis" character before the applicant began using "Captain Cannabis" as a *title* for comic books. *Id.* at *4-5; *see also Andrusiek v. Cosmic Crusaders LLC*, 2022 WL 4103636, *12 (T.T.A.B. Sept. 6, 2022), *aff'd* 2023 WL 6889054 (Andrusiek had been "selling the '420' comic book that included the CAPTAIN CANNABIS character continuously since 2006 to the present, including during 2013-14, and that by 2017, Petitioner sold comic books under the mark CAPTAIN CANNABIS"); *id.* at *9-11 (identifying extensive evidence of promotion of character before series title included the name "Captain Cannabis"). Defendants cite no remotely analogous evidence that was before the district court. Indeed, they did not even cite a single news or magazine article about them, much less trade show or convention sales of any product.

The other two cases Defendants rely on (Br. 49-50) did not rest on analogous use; they found *actual* use in commerce. *See Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*, 2016 WL 7655740, *7 (C.D. Cal. June 20, 2016) (defendant had sold over "$8 million of merchandise to customers in the U.S." using the "Farmasino" name); *Halo Management, LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1032-33 (N.D. Cal. 2003) (party actually "rendered its services" to consumers under the "Halo" name, including email, web searching, and web hosting). In stark contrast, the evidence before the district court here—including Ravine's own

declaration—did not claim a single sale or *user* of any product or service Defendants offered in connection with "Open AI" before December 2022—much less evidence of association. *See* 5-ER-834-37 (¶¶ 4-12). Consistent with this Court's precedent, the district court found that Defendants' website did not constitute use in commerce, even if it "were to credit defendants' testimony about when and why they used their mark." 1-ER-23; *see, e.g.*, *Soc. Techs.*, 4 F.4th at 819 ("maintenance of a website … was not sufficiently public to establish trademark rights"). This was not an abuse of discretion.

### B. Defendants Are Unlikely To Succeed In Showing OpenAI Delayed In Seeking Relief

The district court was well within its discretion to reject Defendants' delay arguments. Contrary to Defendants' assertion (Br. 44), the district court did not "disregard[] a significant portion of the factual record" concerning OpenAI's supposed delay in seeking relief. Rather, the court acknowledged the parties' pre-2023 communications (1-ER-16-17) on which Defendants rely (Br. 43) and "treat[ed] as uncontested the fact that plaintiff knew about defendant Ravine's competing trademark as far back as 2015." (1-ER-25.) The court then thoroughly explained why any delay was not unreasonable (1-ER-25-26), including because (1) "[D]efendants' use of the disputed mark only began to impact plaintiff in late 2022" (citing *Nat'l Customer Eng'g Inc. v. Lockheed Martin Corp.*, 1997 WL 363970, *6 (C.D. Cal. Feb. 14, 1997)); (2) Defendants' progressive encroachments

40

rebut any presumption of laches (citing *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006));[3] and (3) Defendants' actions caused OpenAI escalating harm (citing *Disney Enters. Inc. v. Vid Angel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017)).

Defendants make no effort (Br. 43-44) to compare the facts here to those in their cited cases. Doing so reveals that none of their authority supports Defendants' argument. Neither *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1375 (9th Cir. 1985), which is not a trademark case, nor *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 839 (9th Cir. 2002), addressed progressive encroachment or escalating harm. And unlike the defendants in *RSI Corp. v. IBM Corp.*, 2012 WL 3277136 (N.D. Cal. Aug. 9, 2012), Defendants offered no evidence of "money [invested] to expand [their] business or … business transactions [entered into] based on [their] presumed rights." *Id.* at *16 (quotations omitted).

Defendants now claim that the district court should have conducted an evidentiary hearing to resolve disputed facts relevant to laches. Br. 43. But Defendants twice rejected the district court's invitation for an evidentiary hearing—

---

[3] *See also Activision Publ'g, Inc. v. Activision TV, Inc.*, 2013 WL 12145597, *7 (C.D. Cal. July 18, 2013) (no unreasonable delay, despite defendants having a "trademark registration since 2005," because system at issue "was not operational until 2012"); *Athleta, Inc. v. Pitbull Clothing Co.*, 2013 WL 142877, *11 (C.D. Cal. Jan. 7, 2013) (no unreasonable delay where "recent conduct" created likelihood of confusion, not earlier demand letter and "discussions regarding a potential sale" of defendant's domain name).

both before the oral argument and during it. *Supra* 12; 3-ER-473-474 (not requesting oral argument when given opportunity by district court). Their rejection of the court's invitation to conduct an evidentiary hearing bars them from raising the absence of one as grounds for reversal. *See, e.g.*, *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994), *as amended* (Nov. 22, 1994) ("By failing to request an evidentiary hearing in the district court, the defendants waived their right to raise the issue on appeal."); *Yelp Inc. v. Herzstock*, 788 F. App'x 529, 531 (9th Cir. 2019) (party "waived the argument that the district court should have held an evidentiary hearing by not raising it below").

Even if Defendants had requested an evidentiary hearing, the district court still would have been well within its discretion to decline to hold one. "[T]he refusal to hear oral testimony at a preliminary injunction hearing is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1326 (9th Cir. 1994); *see United States v. Idaho*, 2022 WL 3442500, *1 (D. Idaho Aug. 17, 2022) (denying intervening party's request for evidentiary hearing where the parties "initially agreed that the Court did not need to conduct an evidentiary hearing"); *Fed. Trade Comm'n v. Kutzner*, 2016 WL 11811746, *8 n.7, 13 (C.D. Cal. Nov. 7, 2016) (granting preliminary injunction without hearing oral testimony; "the multiple declarations and exhibits provided by both parties as well as both parties' counsel's

extensive oral argument and proffers at the Preliminary Injunction hearing [were] sufficient to make all necessary determinations").

### C. The Heightened Standard For Mandatory Injunctions Does Not Apply

The district court properly analyzed OpenAI's request for an injunction preventing Defendants from using the "Open AI" mark under the standard for prohibitory injunctions. As a threshold matter, Defendants waived the applicability of the higher standard for mandatory injunctions by affirmatively invoking the prohibitory-injunction standard that the district court applied. 5-ER-813; *see, e.g.*, *Certain Interested Underwriters at Lloyd's, London v. Bear, LLC*, 796 F. App'x 372, 376 (9th Cir. 2019) (appellant waived a "theory [that] was never raised below, and implicates a host of new issues").

The district court was correct in applying the prohibitory standard. Contrary to Defendants' argument (Br. 45-48), it did not enter a mandatory injunction. A preliminary injunction that, like the one here, acts "to restrain [the alleged infringer] from further acts of possible infringement" is a prohibitory injunction, not a mandatory injunction. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009); *see, e.g.*, *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) (district court erred by applying the heightened standard for mandatory injunction: "in the typical trademark case a prohibitory injunction seeks to stop alleged infringement"); 4 McCarthy § 30:50 ("A

43

preliminary injunction that orders defendant to cease its use of the infringing mark is one that maintains the status quo prior to defendant's use and is not a mandatory injunction."). In contrast, requiring the additional action of "product recall and restitution" is a mandatory injunction. *Marlyn Nutraceuticals*, 571 F.3d at 879-880.

The district court cases cited by Defendants (Br. 46-47) do not suggest otherwise. *Athleta, Inc. v. Pitbull Clothing Co.*, 2013 WL 142877 (C.D. Cal. Jan. 7, 2013), which made no mention of mandatory injunctions, enjoined only specific product sales, not the business name as used in connection with any clothing sales, because the defendant had been selling apparel for over a decade that did not use the disputed mark. *See id.* at *2, *12-13. *Sid Berk, Inc. v. Uniroyal, Inc.*, 425 F. Supp. 22 (C.D. Cal. 1977), denied injunctive relief where, unlike here, there was no likelihood of confusion, and plaintiff sought an injunction against products that the defendant had been offering for sale for more than three years and spent hundreds of thousands of dollars advertising. *Id.* at 27-29. *UV RML NL Assets, LLC v. Coulter Ventures, LLC*, 2021 WL 5706870 (C.D. Cal. Oct. 22, 2021), *granted* an injunction, which it explained was prohibitory, not mandatory, because it was not a situation "where the parties 'peacefully' coexisted for several years while the alleged trademark infringement occurred." *Id.* at *5 ("Defendant is therefore incorrect that its current practice of using the mark ROGUE on its films constitutes the status quo."). Consistent with these decisions, the injunction here prohibits Defendants

44

from using the name "Open AI" or "open.ai" in ways that are likely to cause confusion given their offering of a competing product.

But even if the higher mandatory injunction standard were applicable here, the law and facts clearly favored OpenAI for the reasons discussed above. The district court found as much. *See, e.g.*, 1-ER-23 ("the evidence strongly suggests that defendants registered their mark merely to reserve a right to it rather than for a genuine, commercial purpose."); 1-ER-26 ("defendants have provided no evidence of any prejudice resulting from the delay because they have no protectible interest in their mark.").

## II. THE DISTRICT COURT WAS WELL WITHIN ITS DISCRETION TO CONCLUDE THAT THE EQUITABLE FACTORS FAVOR A PRELIMINARY INJUNCTION

### A. OpenAI Would Be Irreparably Harmed Absent A Preliminary Injunction

#### 1. There Is A Presumption Of Irreparable Harm

Defendants' challenge to the district court's irreparable harm finding rests on the erroneous premise that OpenAI did not show that it is likely to prevail on the merits. Br. 50. Because OpenAI made that showing, *see supra*, Part I, irreparable injury is presumed, 15 U.S.C. § 1116(a), and Defendants' arguments are irrelevant.

Defendants' arguments about OpenAI's proof of irreparable harm (Br. 51-53) amount to impermissible challenges to Congress's determination that a likelihood of confusion *constitutes* irreparable harm. *See* H.R. Rep. 116-645, at 19 ("[The

Trademark Modernization Act] confirms that the historical practice of applying a rebuttable presumption of irreparable harm is the appropriate course for claims under the Lanham Act").  Indeed, all but one of the cases Defendants cite (Br. 50-53) predate the Trademark Modernization Act of 2020, which amended the Lanham Act to establish a presumption of irreparable harm in trademark cases, *e.g.*, *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1081 n.16 (N.D. Cal. 2021) (describing change in the law).

The single exception among Defendants' authority is *Anova Applied Electronics, Inc. v. Inkbird Tech. C.L.*, 2023 WL 5177491 (W.D. Wash., Aug. 11, 2023).  That unpublished decision seemed unaware of the presumption and relied on authority that has been superseded by statute for the proposition Defendants quote. *See id.* at *3 ("the Ninth Circuit has made clear that a finding of irreparable harm cannot be based 'solely on a strong case of trademark infringement;' rather, the movant must establish irreparable harm with evidence") (quoting *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013)).

## 2. Even Without The Presumption, There Is Significant Evidence Of Irreparable Harm

Contrary to Defendants' assertions (Br. 50-52), OpenAI's proof of irreparable harm is consistent with what this Court and district courts in this Circuit recognized as proof of irreparable harm before the Trademark Modernization Act, such as OpenAI losing exclusive control of its reputation and goodwill due to the inevitable

association with Defendants' "Open AI" given the conceded confusion between the parties' uses. *Compare* 5-ER-809-13 (Defs. Opp.) *with* 6-ER-1152-54 (Plfs. Mot.); 10-ER-2188-2208 (reflecting confusion); 10-ER-2209-2221 (same); 10-ER-1167-68 (¶ 26) (OpenAI harmed through loss of goodwill); *see SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("Ninth Circuit has recognized that potential loss of goodwill or the loss of ability to control one's reputation" establishes irreparable harm).

As in *SunEarth*, OpenAI "invested significant time in building up a strong reputation," and "potential misidentification poses a serious threat to this goodwill and reputation." 846 F. Supp. 2d at 1083 (granting preliminary injunction); *see, e.g.*, *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991) (affirming preliminary injunction where likely irreparable harm to "advertising efforts and goodwill"); *Greater Los Angeles Softball Ass'n v. Ryan*, 2017 WL 8292779, *8 (C.D. Cal. Sept. 21, 2017) (granting preliminary injunction enjoining use of infringing mark where parties had competing softball tournaments under the same name); *Mortg. Elec. Reg. Sys., Inc. v. Brosnan*, 2009 WL 3647125, *8 (N.D. Cal. Sept. 4, 2009) (granting preliminary injunction enjoining use of infringing mark where potential harm to goodwill warranted injunction). Indeed, Defendants' own cited case affirmed a finding of irreparable harm based on evidence such as customer surveys and testimony from the plaintiff's executive concerning its

advertising. *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756-57 (9th Cir. 2018) (Br. 51). Similar evidence supports the finding here. 6-ER-1164-66 (¶¶ 11-16); 8-ER-1807-39.

The record also contains significant other evidence of irreparable harm, including harmful images that were shown on Defendants' public feed page, watermarked with "Open AI," available for any of Defendants' "2.3 million" website visitors to see, even if they did not themselves enter the prompt to generate the image. 5-ER-837 (¶ 12); 10-ER-2057 (¶ 17); *see, e.g.*, *Abdou v. Davita, Inc.*, 734 F. App'x 506 (9th Cir. 2018) ("Damage to a company's goodwill and reputation can constitute irreparable harm because this sort of harm is difficult to measure."). Defendants complain that Plaintiff did not identify any users who saw these images (Br. 52), but their implication that ***none*** of the 2.3 million visitors to their website saw the harmful content strains credulity and misperceives Plaintiff's burden, particularly given Ravine's concession that anyone can "view, download, and/or share" those "Open AI" watermarked images beyond Defendants' website. 5-ER-837 (¶ 12); 10-ER-2057 (¶ 17).

Documents that Defendants produced after the hearing on the injunction, but before the Court's ruling, show additional irreparable harm that Plaintiff has suffered. 1-SER-21-23. Defendants received numerous third-party emails intended for Plaintiff, divulging confidential information to Defendants and depriving

Plaintiff of the opportunity to respond to its customers' queries and customer service issues. *See* 2-SER-44-90. There can be no reasonable dispute that this kind of confusion about corporate identity causes irreparable harm. *E.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (affirming preliminary injunction where plaintiff "stood to lose its newfound customers and accompanying goodwill and revenue"); *Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cnty. Black Fire*, 2013 WL 6732687, *3 (C.D. Cal. Dec. 19, 2013) ("the disclosure of … private data to defendants is a separate basis for finding a risk of irreparable injury"). Without an injunction, Defendants will continue to divert information intended for Plaintiff, thereby harming Plaintiff's existing and potential relationships and its reputation.

## B. Defendants Identify No Material Harm To Them From A Preliminary Injunction

Defendants' one-paragraph discussion of the "balance of equities" (Br. 52-53) fails to show that the district court abused its discretion in concluding that the balance of equities favors a preliminary injunction. Defendants' suggestion that the Order "completely shuts down Ravine Parties' business" (Br. 53) is unsupported by the record—or logic. Defendants presented no evidence of harm to their business or a single sale they ever made—much less a sale they will lose due to the injunction. Nor do they identify any reason they cannot simply operate their "business"—*i.e.*, offering a portal to a third-party's open-source products—under a different name.

1-ER-13-14 (acknowledging that Defendants were merely offering a third party's open-source product in November of 2022); 10-ER-2146-48. And though Defendants now assert (Br. 52-53) that the district court should have separately addressed the balance of the equities, Defendants did not make a distinct argument below concerning that balance, instead stating only that "the balance of hardships does not favor Plaintiff" due to "Plaintiff's unreasonable delay in seeking injunctive relief." 5-ER-821.

Even if they had, Defendants' litigation tactics are contrary to those of a company supposedly in desperate need of restarting its business. Defendants repeatedly made clear to the district court that, even with an injunction, they have no interest in a speedy trial. *See* 4-ER-562 (in October 2023 asking for July 2025 trial); 3-ER-375 (in March 2024 asking for September 2025 trial); 1-ER-5 (rejecting court's offer of September 2024 trial and again asking "that trial be held October 13, 2025"). Defendants' lack of urgency persists even now, before this Court. They did not seek to stay the injunction pending appeal or expedite briefing of the appeal.

## III. THE PRELIMINARY INJUNCTION IS NOT OVERBROAD

Defendants fare no better in challenging the scope of the preliminary injunction, which is materially identical to the injunction that OpenAI had proposed. *Compare* 1-ER-26-27 (order), *with* 3-ER-550-51 (amended proposed order). As this Court has explained, "15 U.S.C. § 1116(a) vests the district court with the power to

grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1176-77 (9th Cir. 2007) (quotations omitted). The district court acted well within this broad equitable authority in entering the preliminary injunction.

*First*, Defendants forfeited any objection to the scope of the injunction by failing to raise it before the injunction issued and not proposing an alternative injunction. In *Warner Bros. Ent. v. Glob. Asylum, Inc.*, 544 F. App'x 683, 684 (9th Cir. 2013), for example, this Court held that the "district court did not abuse its discretion in granting the preliminary injunction as requested by [plaintiffs] instead of tailoring it to authorize permissible nominative fair use of the protected marks" where defendants "did not propose to the district court or this court specific language or suggestions regarding how the injunction should be modified." So too here, Defendants failed to raise any issues with the proposed injunction's scope before being enjoined. 5-ER-827 (Defendants' Proposed Order).

*Second*, Defendants wrongly assert (Br. 60) that the injunction is overbroad because it infringes their "free speech rights." This concern is merely theoretical,

as, unlike in the cases they cite (Br. 59-60), Defendants fail to identify *any* non-confusing speech or other non-infringing use that is being restricted.[4]

*Third*, even if Defendants could identify some non-confusing speech barred by the injunction, it would not matter because "[w]hen the infringing use is for a similar service, a broad injunction is especially appropriate." *Perfumebay.com*, 506 F.3d at 1177. That is the case here, where Defendants have conceded both similarity of services and confusion. 1-ER-17-18; 3-ER-525-26. Indeed, the record demonstrates that irrespective of its content, the www.open.ai domain name causes confusion if Defendants are offering competing products. *See* 10-ER-2188-208; 10-ER-2209-21; 2-SER-44-90. Thus, Defendants cannot show that the district court abused its discretion by fashioning an injunction that it "deem[ed] reasonable" to "prevent the violation of any right of the trademark owner." *Perfumebay.com*, 506 F.3d at 1177 & n.4 ("Perfumebay failed to demonstrate that the district court abused

---

[4] *See Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*, 572 F. App'x 491, 494 (9th Cir. 2014) (preliminary injunction overbroad because it barred defendant from identified legitimate use of "truthfully representing himself as one of the late Johnnie Cochran's law partners"); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 964 (C.D. Cal. 1997), *aff'd*, 194 F.2d 980 (9th Cir. 1999) (no evaluation of scope of injunction and recognizing "[t]he existence of numerous legitimate, non-infringing uses of the term 'skunk works,'" such as "purely generic or nominative uses of the term"); *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 678-80 (9th Cir. 2005) (no evaluation of scope of injunction and finding that unauthorized use of trademark to criticize plaintiff's product was noncommercial in context of Lanham Act infringement claim).

its discretion" for "enjoining Perfumebay from utilizing the mark solely as a referring Uniform Resource Locator (URL)"); *see id*. at 1174 ("the domain name itself" incorporated plaintiff's mark).

## IV. THE DISTRICT COURT PROPERLY DENIED DEFENDANTS' MOTION UNDER RULE 59(E) AND RULE 60(B)

The district court was also comfortably within its discretion to deny Defendants' efforts to seek a "re-do" through their motion to alter or amend a judgment pursuant to Rule 59(e) or, in the alternative, relief from a judgment or order pursuant to Rule 60(b).

*First*, neither Rule 59(e) nor Rule 60(b) provide any basis for Defendants' request that the district court "vacate[] its order" (2-ER-77). Rule 59(e) permits a court to "alter or amend a judgment," *not* to set aside an order following a "re-do." *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.") (quotations omitted). And a "preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)." *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000). Consequently, Defendants' arguments (Br. 55-58) concerning supposed "excusable neglect" do not provide a basis for reversal.

*Second*, the district court properly concluded that Defendants' decision not to earlier submit the additional material Defendants first identified with their post-order motion—six declarations consisting of more than 150 pages—was a "strategic decision" that did not justify reconsideration. As the court explained, "[a]ll of the evidence defendants put forth *now* existed in November 2023." 1-ER-3-4 (emphasis in original).

Defendants could have submitted additional evidence in connection with their opposition, asked for a sur-reply, raised evidentiary objections following OpenAI's reply (N.D. Cal. L.R. 7-3(d)(1)), addressed any supposedly new arguments at the two-hour oral argument on the preliminary injunction motion, or asked to submit additional evidence after the hearing. (Indeed, Defendants did submit other materials to the district court after the hearing and before the ruling—a statement of recent decision. 3-ER-382-84.) But Defendants did none of that, reflecting their "strategic decision that it was not relevant to the Court's determination on the preliminary injunction." 1-ER-4.

The district court was well within its discretion to deny relief. *See, e.g.*, *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 614 (C.D. Cal. 2013) ("[A] party's dissatisfaction with counsel's strategic decisions after an adverse result on a motion is not a proper ground for granting a motion for reconsideration, even if counsel was arguably negligent."); *Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*,

2011 WL 2748334, *3 (N.D. Cal. July 14, 2011) ("The rule governing reconsideration was not meant to relieve any litigant of the consequences of a strategic or tactical decision that later proves improvident."). This is especially so given that OpenAI's arguments about Ravine not making use of "Open AI" as a trademark and submitting falsified specimens to the PTO were *not* new on reply or at the hearing. *Contra* Br. 55-56. They were front and center in OpenAI's opening brief in support of a preliminary injunction. *See* 6-ER-1137-40; 6-ER-1143-44. Defendants' silence was deliberate.

It is thus no surprise that Defendants fail to identify any authority supporting relief under Rule 59(e) or Rule 60 in remotely similar circumstances. Rather, the two decisions they cite (Br. 54-55) rested on ministerial errors by counsel, not a reassessment of counsel's strategic decisions. *See In re Gilman*, 887 F.3d 956, 963 (9th Cir. 2018) (bankruptcy court did not abuse its discretion in granting a 60(b) motion where counsel admitted that she did not object to judgment creditors' objection to the homestead exemption "because of a 'calendaring error' and her secretary's disability," and where the lower court found the "equitable factors favored granting … relief"); *U.S. Bank Nat'l Ass'n v. Thunder Properties, Inc.*, 2019 WL 2110512, *2-3 (D. Nev. May 13, 2019) (granting motion following discovery of a "second notice of delinquent assessment," where "neither party apparently recognized the existence of a second notice of delinquent assessment lien" and order

to be reconsidered "was premised on the absence of a second notice of delinquent assessment").

*Third*, even if, as Defendants maintain, their decision not to object to the expert Declaration of Dr. Seth James Nielson could somehow constitute "excusable neglect" for purposes of Rule 60(b) (Br. 55-56), and that rule were relevant here, that still would not afford any basis for relief because it had little impact on the district court's findings. As the court recognized, "much of" plaintiff's "credible evidence that defendants did not use their mark in commerce, if at all until recently" was "presented in plaintiff's opening brief" and "went unanswered in defendants' opposition." 1-ER-22.

The Nielson Declaration largely addressed the same issues OpenAI had raised in its opening brief—*i.e.*, Defendants' failure to offer products or services through the www.open.ai webpage or otherwise—about which OpenAI had offered evidence in its initial submission through webpage captures from the Wayback Machine and evidence that Ravine's representations to the PTO regarding use were false. This included evidence that the specimen Ravine submitted to the PTO appeared to have been "created the day before he submitted his application" and included content copied from other sources. 1-ER-23; 1-ER-15.

Defendants' opposition did not dispute that evidence, and Ravine's own declaration did not claim any users of any product or service under the "Open AI"

56

name before December 2022. *Cf.* 5-ER-837 (¶ 12) (Ravine claiming to have had 170,000 "users" in December 2022). The district court's determination that Plaintiff had likely senior rights was well supported based on this record alone, given that OpenAI had indisputably offered products and services in connection with its "Open AI" mark before December 2022. *See Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("[T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services."); 6-ER-1162-65 (¶¶ 6-12).

*Finally*, consideration of Defendants' post-injunction argument that from 2015 to 2017 individuals visited the open.ai domain and submitted their email addresses (Br. 58) is not necessary to prevent "manifest injustice," as it would not affect the district court's determination that Defendants' purported "use of the disputed mark on the Open.ai domain" was not "tied to any commercial good or service." 1-ER-23. Mere "token use" or "adoption of a mark without bona fide use in commerce, in an attempt to reserve rights for the future, is insufficient." *Soc. Techs.*, 4 F.4th at 817. Genuine use in commerce requires "actual use" and "display" of the mark in a "sufficiently public" manner "to identify or distinguish the marked goods in an appropriate segment of the public mind." *Id.*

## CONCLUSION

The district court's orders should be affirmed.

Dated: June 5, 2024                     Respectfully submitted,

                                        *s/ Margret M. Caruso*

William B. Adams                        Margret M. Caruso
Dylan I. Scher                          Robert P. Feldman
QUINN EMANUEL URQUHART                  QUINN EMANUEL URQUHART
  & SULLIVAN, LLP                         & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor           555 Twin Dolphin Drive 5th Floor
New York, NY 10010                      Redwood Shores, CA 94065
(212) 849-7000                          (650) 801-5000

Robert M. Schwartz                      Sam S. Stake
Aaron H. Perahia                        QUINN EMANUEL URQUHART
QUINN EMANUEL URQUHART                    & SULLIVAN, LLP
  & SULLIVAN, LLP                       50 California Street, 22nd Floor
865 S. Figueroa Street, 10th Floor      San Francisco, California 94111
Los Angeles, CA 90017                   (415) 875-6600
(213) 443-3000


*Counsel for Plaintiff-Appellee*

## **REQUEST FOR ORAL ARGUMENT**

Appellee respectfully requests that this Court hear oral argument in this appeal.

Dated:  June 5, 2024

*s/ Margret M. Caruso*
Margret M. Caruso

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** 24-1963_____

The undersigned attorney or self-represented party states the following:

[ **X** ]   I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *s/ Margret M. Caruso*_____ **Date** June 5, 2024_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**                                                                                   *New 12/01/18*

60

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs
*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____24-1963_____

I am the attorney or self-represented party.

**This brief contains** ___13,222_____ **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ **X** ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Margret M. Caruso*_____ **Date** June 5, 2024_____
*(use "s/[typed name]" to sign electronically-filed documents)*

---

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                               *Rev. 12/01/22*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Appellee's Answering Brief and accompanying Supplemental Excerpts of Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS. I certify that all participants in the case are registered ACMS users and that service will be accomplished by ACMS.

Dated: June 5, 2024                 *s/ Margret M. Caruso*
                                    Margret M. Caruso