No. 24-1963

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OPEN ARTIFICIAL INTELLIGENCE, INC. and GUY RAVINE

*Defendants and Appellants,*

*v.*

OPENAI, INC.

*Plaintiff and Appellee.*

Appeal from United States District Court
Northern District of California
Hon. Yvonne Gonzalez Rogers
U.S. District Court Case No. 4:23-cv-03918-YGR

APPELLANTS' REPLY BRIEF

**WAYMAKER LLP**
Ryan G. Baker
rbaker@waymakerlaw.com
Scott M. Malzahn
smalzahn@waymakerlaw.com
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

*Attorneys for Defendants and Appellants Open Artificial Intelligence, Inc.
and Guy Ravine*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................4

I.    THE DISTRICT COURT'S FINDING OF LIKELIHOOD OF SUCCESS ON THE MERITS IS REVERSIBLE ERROR ..........................4

    A.   OAI Concedes it Bears the Burden of Proving OAI's Mark Acquired Secondary Meaning Before November 16, 2022 .................4

    B.   The Record Does Not Contain Sufficient Evidence Showing the "OpenAI" Mark Acquired Secondary Meaning Before November 16, 2022 ...............................................................................7

        1.   OAI Does Not – and Cannot – Defend the Decision Below or its Reasoning ..............................................8

        2.   Evidence of Confusion is Not a Sufficient Substitute for Secondary Meaning ...................................................11

        3.   There is No Evidence of Advertising or Media Coverage Sufficient to Support Requisite Finding of Secondary Meaning ..................................................15

        4.   The Record Does Not Support a Finding of OAI's Continuous Use of its Mark ......................................17

        5.   OAI Has Not Shown Substantially Exclusive Use to Support Secondary Meaning .....................................18

        6.   The PTO's Determinations Are Entitled to Deference ............19

    C.   The Ravine Parties Had Priority of Use Thereby Foreclosing a Finding of Likelihood of Success ......................................21

    D.   The Law and Facts Do Not Clearly Favor OAI and thus the Mandatory Injunction was Entered in Error ........................................24

II.   THE DISTRICT COURT ERRED IN DENYING THE RAVINE PARTIES' RULE 59/60 MOTION ................................................25

III.   THE PRELIMINARY INJUNCTION IS IMPERMISSIBLY OVERBROAD ........................................................................27

IV.   THE DISTRICT COURT ERRED IN FINDING IRREPARABLE HARM TO OAI .....................................................................28

CONCLUSION .......................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*165 Park Row, Inc. v. JHR Development, LLC*,
  No. 2:12-cv-00106-NT,
  2013 WL 6384819 (D. Me. Dec. 6, 2013)......................................................4, 16

*adidas America, Inc. v. Skechers, USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ...................................................................29

*Allen v. Santa Clara County Correctional Peace Officers Association*,
  38 F.4th 68 (9th Cir. 2022) ....................................................................24

*Arc of California v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ...................................................................3

*Balla v. Idaho State Board of Corrections*,
  869 F.2d 461 (9th Cir. 1989) ..................................................................25

*Carter-Wallace, Inc. v. Procter & Gamble Co.,*
  434 F.2d 794 (9th Cir. 1970) ..................................................................11

*Cicena Ltd. v. Columbia Telecommunications Group*,
  900 F.2d 1546, 1574 (Fed. Cir. 1990) ......................................... 14, 18

*Cochran Firm P.C. v. Cochran Firm Los Angeles,* LLP,
  572 F. App'x 491 (9th Cir. 2014) .........................................................28

*Converse, Inc. v. International Trade Commission Skechers U.S.A., Inc.*,
  909 F.3d 1110 (Fed. Cir. 2018) ........................................................6, 7

*Cosmic Crusaders, LLC v. Andrusiek*,
  No. 2023-1150,
  2023 WL 6889054 (Fed. Cir. Oct. 19, 2023)................................. 22, 23

*Eli Lilly and Co. v. Revlon, Inc.,*
  577 F. Supp 477 (S.D.N.Y. 1983) .........................................................5

*Faberge, Inc. v. Saxony Products, Inc.*,
  605 F.2d 426 (9th Cir. 1979) ................................................................16

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
   198 F.3d 1143 (9th Cir. 1999) ...............................................................6

*Garcia v. Google, Inc.*,
   786 F.3d 733, 740 (9th Cir. 2015) .......................................................24

*Golden Door, Inc. v. Odisho*,
   646 F.2d 347 (9th Cir. 1980) ...............................................................16

*Herbal Chef, LLC v. AFG Distribution, Inc.*,
   840 F. Appx. 223 (9th Cir. 2021) ........................................................20

*In re Bongrain* (*American*) *International Corp.*,
   894 F.2d 1316 (Fed. Cir. 1990) .............................................................6

*In re Gilman*,
   887 F.3d 956 (9th Cir. 2018) ...............................................................26

*Internet Specialties West, Inc. v. Million-DiGiorgio Enterprises, Inc.*,
   559 F.3d 985 (9th Cir. 2009) ...............................................................30

*Kifle v. YouTube LLC*,
   No. 21-cv-01752-CRB,
   2022 WL 326613 (N.D. Cal. Feb. 3, 2022) .........................................20

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) ...............................................................27

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   632 F.2d 817 (9th Cir. 1980) .................................................... 4, 5, 17

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352, 1354 (9th Cir. 1985) ...................................................11

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   985 F. Supp. 949 (C.D. Cal. 1997) ......................................................28

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ...............................................................24

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
   724 F.2d 357 (2d Cir. 1983)................................................................15

*National Customer Engineering Inc. v. Lockheed Martin Corp.*,
   No. CV 96-8938 DDP (ANx),
   1997 WL 363970 (C.D. Cal. Feb. 14, 1997) ......................................29

*NewRez v. LLC v. Brosnan*,
   No. CV 22-8822-MWF (MAA),
   2023 WL 2347441 (C.D. Cal. Jan. 30, 2023) ....................................10

*Nutraceutical Corp. v. NutraChamps, Inc.*,
    No. 2:18-cv-00400-DB-DAO,
   2020 WL 6382042 (D. Utah Oct. 30, 2020) ......................................13

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
   762 F.2d 1374 (9th Cir. 1985) ..........................................................29

*Parks LLC v. Tyson Foods, Inc.*,
   863 F.3d 220 (3d Cir. 2017)..............................................................12

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004) ..........................................................27

*RXD Media, LLC v. IP Application Development LLC*,
   986 F.3d 361 (4th Cir. 2021) ............................................................23

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) ............................................................5

*T.A.B. Systems v. Pactel Teletrac*,
   77 F.3d 1372 (Fed. Cir. 1996)...........................................................22

*Thompson v. Runnels*,
   705 F.3d 1089 (9th Cir. 2013) ..........................................................24

*Trowbridge Sidoti LLP v. Taylor*,
   No. 8:16-CV-00771-ODW-SK,
   2017 WL 3720643 (C.D. Cal. Aug. 28, 2017) ....................................5

*U.S. Bank National Association v. Thunder Properties, Inc.*,
   3:17-CV-00106-MMD-WGC,
   2019 WL 2110512 (D. Nev. May 13, 2019)......................................................26

*United States v. Martin*,
   226 F.3d 1042 (9th Cir. 2000) .........................................................................25

*Waldman Publishing Corp. v. Landoll, Inc.*,
   43 F.3d 775 (2d Cir. 1994)...............................................................................27

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
   419 F.3d 925 (9th Cir. 2005) ...........................................................................15

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition*, § 15:47 ........................ 10, 18

**Rules**

Fed. R. Civ. P. 59(e)..........................................................................................25

Fed. R. Civ. P. 60(b) .........................................................................................25

## INTRODUCTION

This appeal presents inequitable and troublesome circumstances. The district court issued a preliminary injunction to appellee OpenAI, Inc. ("OAI"), preventing appellants Guy Ravine and Open Artificial Intelligence Inc. (the "Ravine Parties") from continuing to use the open.ai domain they have owned since 2015 and the "Open AI" trademark for which they own a still-valid federal registration, in favor of OAI, a junior user of the mark who has been unable to establish any trademark rights after years of effort. Leaving this injunction in place would set a clear precedent for anticompetitive behavior: it would allow well-funded market entrants like OAI, with zero established trademark rights, to shut down the business of their smaller predecessors on a razor thin record and without even going to trial on the merits.

Moreover, far from having clean hands, OAI chose to adapt and commercialize the "OpenAI" mark even though OAI knew – on day one of their company's existence – that the Ravine parties owned the domain and claimed rights in the "Open AI" mark. Thus, even if OAI were to eventually establish trademark rights at trial, and even if a factfinder were to find that such rights were somehow infringed by the Ravine Parties, OAI's asserted injuries would be entirely of its own making.

Turning to OAI's response brief, OAI takes great pains to distract from the heart of the Ravine Parties' appeal: that the district court abused its discretion in entering the preliminary injunction based upon a finding that OAI's "OpenAI" mark acquired secondary meaning before the Ravine Parties used the mark in commerce, which undisputedly occurred at the latest in November 2022. The district court's errors become more glaring in light of OAI's response brief, which does not seriously try to defend the record or the district court's reasoning. OAI chooses not to acknowledge, let alone rebut several important aspects of the Ravine Parties' opening brief including:

- the district court erred by relying on the public release of ChatGPT in finding secondary meaning when it is undisputed that ChatGPT was released *after* the date the "OpenAI" mark purportedly acquired secondary meaning;

- the district court erred by relying on the public release of DALL·E 2 in finding secondary meaning despite the fact that DALL·E 2 was publicly released just *two days before* the "OpenAI" mark purportedly acquired secondary meaning;

- the absence of evidence showing any association of the OAI mark with OAI or its products;

- OAI's own evidence showing that OAI was relatively unknown prior to the release of ChatGPT.

Instead, OAI's opposition relies on smoke screens to distract from the lower court's actual ruling that OAI was likely to succeed on the merits because it "had acquired secondary meaning" "since at least September of 2022." 1-ER-2; 1-ER-22. Tellingly, OAI does not even mention the phrases "secondary meaning" or

2

"acquired distinctiveness" in its Summary of Argument, opting to state that the district court correctly found OAI is likely to show that "it had protectible trademark rights in OPENAI by September 2022." (Resp. Br. at 16-18.) This attempted sleight of hand rings hollow. The district court's order is "illogical, implausible, [and] without support in inferences that may be drawn from the facts in the record" and subject to reversal for an abuse of discretion. *See Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014).

Further, OAI's choice to dedicate large swaths of its brief attacking Ravine's credibility is misplaced. Whether the lower court believed Ravine or OAI's "expert" regarding Ravine's use of the "Open AI" trademark before November 2022 has no impact on whether OAI's mark acquired distinctiveness before then. Moreover, Ravine's assertions as to the prior use of the mark are supported by clear evidence which former counsel negligently failed to submit with the underlying briefing. This evidence was submitted to the district court as part of the Ravine Parties' Rule 59/60 Motion and forensically confirms that there was significant traffic and unique legitimate users of Ravine's "Open AI" sites long before September 2022. The district court further abused its discretion in failing to consider this evidence.

The preliminary injunction order must be vacated and reversed. At a minimum, this Court should narrow the scope or direct the district court to hold

further proceedings and possibly an evidentiary hearing to address the overbreadth of the order as entered.

## ARGUMENT

## I. THE DISTRICT COURT'S FINDING OF LIKELIHOOD OF SUCCESS ON THE MERITS IS REVERSIBLE ERROR

### A. OAI Concedes it Bears the Burden of Proving OAI's Mark Acquired Secondary Meaning Before November 16, 2022

To show a likelihood of success on the merits, OAI concedes – as its must – that it bears the burden of showing that its "OpenAI" mark acquired secondary meaning before the Ravine Parties' undisputed use of the mark on November 16, 2022. (*See* Resp. Br. at 21, 27.) OAI has not met this burden, let alone the heightened showing required for such a highly descriptive mark.

For a descriptive mark to become distinctive in the minds of a substantial segment of the consuming public, OAI bears a heavy burden. As stated in OAI's own authority, secondary meaning is acquired when "'a significant quantity of the consuming public understands [the] name as referring exclusively' to one entity's products or services." *165 Park Row, Inc. v. JHR Development, LLC*, No. 2:12-cv-00106-NT, 2013 WL 6384819, at *1 (D. Me. Dec. 6, 2013) (citations omitted); *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980) ("[t]he basic element of secondary meaning is a mental recognition in buyers' and

4

potential buyers' minds that products connected with the symbol or device emanate from or are associated with the same source"). This test is not easy to satisfy: "proof of secondary meaning is difficult" and "[o]n a motion for preliminary injunction, plaintiffs' proof must meet the burden of showing probable success." *Eli Lilly and Co. v. Revlon, Inc.,* 577 F. Supp 477, 483 (S.D.N.Y. 1983) ("Popularity and sales alone cannot establish secondary meaning"); *see also Trowbridge Sidoti LLP v. Taylor*, No. 8:16-CV-00771-ODW-SK, 2017 WL 3720643, at *5 (C.D. Cal. Aug. 28, 2017) (party failed to submit the "overwhelming evidence of secondary meaning" to overcome PTO finding of no distinctiveness).

OAI's reliance on *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984) to argue it need only demonstrate a "fair chance" of success on the merits is misplaced. There, the district court found the balance of the hardships tipped sharply in plaintiff's favor and concluded that plaintiff had met its burden by producing *inter alia*, "correspondence from consumers stating that they understood 'Hi-Res Adventure' to identify Sierra's products," and trade publications referring to Sierra's products "only as 'Hi-Res Adventures.'" *Id*. at 1422-23. In contrast here, the district court did not separately analyze the balance of the hardships, much less make a finding that the balance tipped sharply in OAI's favor. Moreover, *Sierra* did not involve multiple PTO findings of a highly-

5

descriptive mark, and OAI did not even produce the type of secondary meaning evidence that supported the decision in that case. OAI's case of secondary meaning is far weaker than even *Sierra*.

OAI's argument that the heightened burden applicable to highly descriptive marks does not apply in the Ninth Circuit is erroneous. In *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999), this Circuit held that a highly descriptive mark "could be a valid trademark only with a strong showing of strong secondary meaning." This rule is in accord with the Federal Circuit. *See In re Bongrain* (*American*) *International Corp.*, 894 F.2d 1316, 1317 n.4 (Fed. Cir. 1990) ("[t]he greater the degree of descriptiveness [], the heavier the burden to prove [] secondary meaning.") The PTO found OAI's mark to be "highly descriptive" and ***rejected*** OAI's registration applications on these grounds on multiple occasions. 6-ER-1089-94; 5-ER-905-14; 5-ER-954-63. The burdens used by the PTO for registering a mark apply in other trademark proceedings, such as suits seeking to enforce unregistered marks. *See Converse, Inc. v. International Trade Commission Skechers U.S.A., Inc.*, 909 F.3d 1110, 1121 (Fed. Cir. 2018). Under any standard, OAI has not shown a likelihood of success on the merits based on the threadbare record in front of the district court.

**B.** **The Record Does Not Contain Sufficient Evidence Showing the "OpenAI" Mark Acquired Secondary Meaning Before November 16, 2022**

Because OAI bears the burden of showing "its mark had acquired secondary meaning before the first [allegedly] infringing use," it can only show a likelihood of success by producing substantial evidence that its mark acquired secondary meaning before November 16, 2022. (*See* Opening Br. at 20 (quoting *Converse*, 909 F.3d at 1116-17)). The district court primarily relied on the public launch of DALL·E 2 on September 28, 2022 and ChatGPT on November 30, 2022 as somehow conferring secondary meaning by "September of 2022." *See* 1-ER-21-22; 1-ER-4-5. Realizing the clear error, OAI has scoured the record to cobble support for the district court's decision. In doing so, OAI acknowledges there is no direct evidence showing that a substantial (or any) segment of consumers associate the "OpenAI" mark with OAI itself or any of its products. OAI attempts to navigate around the absence of evidence, by contending that "circumstantial evidence" exists from which secondary meaning can be inferred. (Resp. Br. at 24, 27.)

However, this supposed evidence, which was never intended to build a secondary meaning case, is legally insufficient to support a finding that the

OpenAI mark acquired secondary meaning at the relevant time before November 16, 2022. For this reason alone, this Court should reverse.

      1.    <u>OAI Does Not – and Cannot – Defend the Decision Below or its Reasoning</u>

Despite the district court's unequivocal and overwhelming reliance on the popularity of ChatGPT to support its decision, OAI conspicuously does not even acknowledge the ChatGPT release in its entire secondary meaning argument. (*See* Resp. Br. at 20-45.) This is because ChatGPT was indisputably released on November 30, 2022 and came too late in time to support the district court's finding that the "OpenAI" mark acquired secondary meaning by the Ravine Parties' first use, much less two months earlier in "September 2022." 1-ER-21-22; 1-ER-5.

Unable to rely on the release of ChatGPT, OAI dedicates just over a single page in its brief attempting to justify the district court's reasoning and order. (Resp. Br. at 21-22.) Specifically, OAI argues that "[d]uring the first nine months of 2022," 1.5 million users were using its DALL·E 2 product, a single article was published proclaiming OAI was a top "influential company of 2022," and OAI had "significant growth and investments" such that it had an "established place in the market." (*Id*.) This supposed evidence is woefully insufficient.

First, the single article, published on March 30, 2022, is merely one paragraph, and states that OAI had recently "unveiled two new neural networks"

that "grapple with sophisticated concepts." 7-ER-1318. Whether these products are ultimately "influential" says nothing as to secondary meaning for the "OpenAI" mark. Further, the evidence shows that in September 2022, OAI was not "established in the market" but still trying to find its footing. *See* 7-ER-1326-27 (explaining DALL·E 2's public release was due to "a number of other text-to-image systems . . . drawing attention away from OpenAI's own offering.")

Second, OAI's evidence that "1.5 million people" were using DALL·E 2 as of September 2022 does not establish secondary meaning, particularly when that product was not even publicly available until the end of September. The record shows an iteration of the DALL·E software was made available as part of a "research preview" beginning in April 2022 and a select group of people were provided access with a "beta" version in July 2022. 6-ER-1219-20. DALL·E 2 was publicly released for the first time on September 28, 2022. *Id.* It is axiomatic that the focus of secondary meaning inquiry is on the perception of the mark within the minds of the consuming public, and the notion that secondary meaning was acquired within 2 days of DALL·E 2's public release is unsupportable and implausible.

Further, even if the DALL·E 2 mark had achieved some level of popularity, this would not be probative of secondary meaning in the entirely different "OpenAI" mark. There is no evidence showing DALL·E 2 or earlier versions of

9

this product drew public attention to the "OpenAI" mark such that significant portions of the consuming public associate this mark with the producer of DALL·E. In short, there is no causation evidence tying release or popularity of DALL·E to the acquisition of secondary meaning in the separate "OpenAI" mark. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 15:47 ("causation between the trademark and the popularity must be proved.")

OAI cites a single inapposite case to argue that its pre-public DALL·E 2 users supports secondary meaning. (Resp. Br. at 22.) But in *NewRez v. LLC v. Brosnan*, No. CV 22-8822-MWF (MAA), 2023 WL 2347441, at *4 (C.D. Cal. Jan. 30, 2023), the court granted the injunction when the defendants did not oppose it or appear at the hearing. *Id.* at *1. Moreover, secondary meaning existed in plaintiff's "Shellpoint Mortgage Servicing" name and mark (the mark that was used in connection with the services at tradename at issue) in part because plaintiff mortgage servicer had served more than 1.7 million loans nationwide. *Id.* at *2.

Here, OAI is not seeking to establish secondary meaning in the limited market for jumbo loan transactions and home equity lines of credit, but in a mark for a company that by its own words, creates products meant to be used by all of humanity. 6-ER-1171. Indeed, OAI touts that its flagship product, ChatGPT "reached an estimated 100 million monthly active users" in January 2023 and had 1.4 billion visits to its websites in August 2023. 6-ER-1163-65; 6-ER-1260-67. But

10

as recently as February 2024, OAI's application to register the "ChatGPT" mark was rejected by the PTO as being "descriptive" without secondary meaning. 2-ER-83-86. If the world-renown "ChatGPT" has not acquired secondary meaning in well over a year since release, it is implausible that the far less popular "OpenAI" mark has not done so in a much shorter time frame and without the benefit of ChatGPT's success. 1.5 million DALL·E 2 private beta users in a world with billions of potential consumers is a far cry from establishing "the mental association" between mark and source required for secondary meaning. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985); *Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 800 (9th Cir. 1970) (plaintiff failed to show secondary meaning even with a survey that showed 25% of association).

### 2.  Evidence of Confusion is Not a Sufficient Substitute for Secondary Meaning

To try to circumvent the absence of any actual evidence of secondary meaning, OAI points to the district court's "findings of confusion" as proof of secondary meaning. (Resp. Br. at 22-23.) However, OAI ignores the Ravine Parties' cited authority that evidence that two marks are confusingly similar does not "lead to any valid conclusion about whether either of the two has secondary meaning." *See Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 234-35 (3d Cir.

11

2017). Moreover, the district court did not rely on, or cite to, evidence of confusion to support its secondary meaning determination. 1-ER-18.[1]

In *Parks*, just as here (8-ER-1815), the plaintiff conducted a "Squirt" survey and argued it was sufficient to demonstrate secondary meaning. The Third Circuit rejected this, because while a Squirt survey "may show a likelihood of confusion … [w]hat it does not do or even purport to do, [], is prove secondary meaning." 863 F.3d at 234-35; *see also Royal Crown Company, Inc. v. The Coca-Cola Company*, 892 F.3d 1358, 1371 (Fed. Cir. 2018) (survey insufficient to demonstrate "public's perception of the [mark]"). Tellingly, OAI does not acknowledge, let alone attempt to distinguish these two illustrative cases, both of which were cited in the Opening Brief.

Further, all of the purported evidence of confusion was from 2023, well after the association was purported to have been established. *See* 10-ER-2168-76; 10-ER-2211-21; 8-ER-1816. *See Royal Crown*, 892 F.3d at 1371 ("secondary meaning… exists at a specific time, in a specific place, among a specific group of people who recognize" a mark indicates "one unique commercial source.") (citations omitted).

---

[1] OAI mischaracterizes the district court's background recitation on confusion as "findings" to support secondary meaning. (*See* Resp. Br. at 23-24 (citing to the "Background" in the district court's order rather than the "Analysis").) However, the district court found association and distinctiveness by exclusively relying on the public launches of DALL·E and ChatGPT. 1-ER-21-22.

OAI's reliance on *Nutraceutical Corp. v. NutraChamps, Inc.*, No. 2:18-cv-00400-DB-DAO, 2020 WL 6382042, at *5 (D. Utah Oct. 30, 2020) to argue it is "unrealistic" to have a distinctiveness survey conducted "just in case" a competitor might later infringe their trademarks is misplaced. Unlike in *Nutraceutical*, OAI was fully aware that the Ravine Parties had the Open.AI domain and mark for eight years, and even tried to purchase the domain name and mark from Ravine. 5-ER-952-53. Moreover, in November 21, 2022, OAI argued to the PTO that its "OpenAI" mark had acquired distinctiveness. 6-ER-1090-91. Thus, at least by that time, OAI was incentivized to prepare a secondary meaning survey. Its failure to submit one nearly a year later when it moved for a preliminary injunction was a strategic choice. OAI did not even make a secondary meaning argument in its preliminary injunction briefing.

Further, OAI's argument that Ravine "sought to capitalize" on its mark by offering "confusingly similar products" (Resp. Br. at 23) is factually and legally incorrect. The Ravine Parties created the "Open AI" mark and domain name *eight months* before OAI even became a company. 5-ER-834-35. OAI chose to adopt the same name and services and any "confusion" is of OAI's own making. Further, there is no assertion that the Ravine Parties introduced a product seeking to capitalize on DALL·E, ChatGPT, or any other OAI product. As a legal matter, the release of a similar and competing text-to-image generator does not equate to an

13

inference or finding of secondary meaning. *See Cicena Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1552 (Fed. Cir. 1990) (entry into the market meant "to capitalize on [] intrinsic consumer-desirability than on any alleged secondary meaning developed by [plaintiff]" and "the existence of other similar telephone designs which compete with" plaintiff "points strongly away from a finding of secondary meaning.") Here too, the evidence shows that there were many products competing with OAI's image-generator and that DALL·E 2 was publicly released to keep up with competition due to "a number of other text-to-image systems." 7-ER-1326-27.

Finally, OAI contends that trademark registration regulations do not require a survey "to prove acquired distinctiveness for obtaining a registration" and it can be shown through "appropriate evidence" like that which OAI submitted. (Resp. Br. at 24-25.) But the PTO has denied OAI's registration application for the "OpenAI" mark using these very regulations on three separate occasions in 2023 alone. 6-ER-1089-94; 5-ER-905-14; 5-ER-954-63. There is nothing in the record to support that users associate the OAI mark with the company itself or its products.

14

3.    <u>There is No Evidence of Advertising or Media Coverage</u>

<u>Sufficient to Support Requisite Finding of Secondary Meaning</u>

Turning to other purported "circumstantial evidence," OAI argues that "extensive" advertising and "unsolicited" media coverage demonstrates "the source-identifying function of the [OpenAI] name." (Resp. Br. at 26.) This is baseless and unsupported by the record. First, neither the district court nor OAI cite a single piece of evidence that OAI engaged in any advertising of its "OpenAI" mark, other than use of the mark on its website and on social media. Even if it had, proof of an expensive and successful advertising campaign would still not be enough to prove secondary meaning. *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 361 n.2 (2d Cir. 1983).

Moreover, the inapposite media coverage in the record does not support secondary meaning here. OAI submitted a handful of December 2015 articles about its launch but these articles, published before a product was released, do not bear on secondary meaning which focuses on "whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005). OAI also submitted multiple news and media excerpts, the vast majority of which were published in 2023. *See* 7-ER-1283 – 8-ER-1637. At best, the articles show OAI was becoming known to the public in 2023; they do not

15

speak to consumer association of OAI and its mark, and certainly not in the 2022 relevant time frame. *Id.*[2]

OAI claims that these 2023 articles still provide "circumstantial proof" of secondary meaning at an earlier, unspecified point in time. (Resp. Br. at 27-28). But OAI's two cases on this issue are inapposite. *165 Park Row*, 2013 WL 6384819, at *2 dealt with a motion in *limine* where the court applied federal evidentiary rules in determining whether to allow media articles into trial. The court did not provide any analysis as to the timing, weight, or significance of these articles on secondary meaning. *Id.* And in *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 428 (9th Cir. 1979), the appellate court ruled the trial court did not err when it based its secondary meaning finding on evidence of advertising, sales, and copying of plaintiff's trade dress. Contrary to OAI's assertion, the trial court there did not base its finding of secondary meaning upon a 4-year-old customer survey. *Id.* Those inapposite cases aside, OAI again fails to address that "secondary meaning is a time-related concept" that must exist "at a specific time, in a specific place." *Royal Crown*, 892 F.3d at 1371.

---

[2] Unlike in *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 349 (9th Cir. 1980) relied on by OAI, where the media articles were published upon the opening of the salon, and years before a competing salon was created, the OAI media coverage does not support a finding of secondary meaning on the facts here.

To that end, OAI does not acknowledge or attempt to rehabilitate its own evidence showing its mark did not have secondary meaning in 2022. For example, OAI ignores the district court's reliance on a *Wired.com* news article that stated that OAI and its mark were not well known to consumers before the release of ChatGPT. *See* 8-ER-1627. Other unacknowledged examples in the record abound. *See, e.g.* 7-ER-1494 (OAI publicly launched ChatGPT "with zero fanfare" and "few expectations"); 3-ER-533 (district court's observation that OAI "certainly didn't have [common law rights] before November of 2022" and counsel was "living in a bubble" to the extent she claimed otherwise). This hardly supports a finding that before November 16, 2022, there existed the requisite consumer association to support secondary meaning in OAI's mark. *Levi,* 632 F.2d at 820.

4.    The Record Does Not Support a Finding of OAI's Continuous
       Use of its Mark

OAI also does not point to evidence establishing its continuous use of the mark in commerce. OAI's reliance on a 2016 article that does not reflect use of the mark or evidence its continued use does not support secondary meaning. Similarly, OAI's additional uncited references to a GPT-3 application released 4 years later in 2020 and a non-public DALL·E image generator in 2021 do not support continuous use. (*See* Resp. Br. at 28.)

17

Further, the PTO refused registration of OAI's mark stating that "the allegations of five years' use is insufficient to show acquired distinctiveness because the applied-for mark is highly descriptive of applicant's good and/or services." 6-ER-1091. OAI's own record proves the same. As of August 2023, traffic to OAI's website was overwhelmingly driven by its products, not the mark or company itself. ChatGPT (with and without a space) was the top keyword driving traffic to OAI's website, accounting for 31.1 million keyword hits, compared to 1.6 hits for "openai." 6-ER-1264. Thus, OAI's use of the mark on its products does not proffer a causal link between OAI's mark and those products on this record. *See Cicena*, 900 F.2d at 1551; 2 McCarthy on Trademarks § 15:47 (5th ed.).

5.    <u>OAI Has Not Shown Substantially Exclusive Use to Support Secondary Meaning</u>

OAI also has not demonstrated its use of the highly descriptive mark has been substantially exclusive. The record instead reflects that the Ravine Parties used the "Open AI" mark in commerce throughout the time OAI's use of the mark was purportedly substantially exclusive. OAI's own evidence which demonstrates that as early as 2016, articles meant to cover OAI were using the Ravine Parties' "Open AI" mark and linking to the open.ai website. 10-ER-2196; 10-ER-2199; 10-ER-2207. Further, there is no dispute that OAI was aware that the Ravine Parties

18

had this domain name and were using it since at least 2015 or that OAI tried to buy the open.ai domain and mark from Ravine. 5-ER-838; 5-ER-916-17. OAI chose to use a highly descriptive mark and knew immediately that it did not have exclusive use. At a minimum, these are factual issues that require resolution by a jury after a full trial on the merits, not by the court at this early juncture on the insufficient record in this case.

OAI's assertion that the Ravine Parties "presented no evidence of any third party using 'OpenAI' for similar [AI] services" is a weak attempt at shifting its own burden. (Resp. Br. at 30.) OAI failed to submit an employee declaration or other evidence establishing that OAI's use of the "OpenAI" mark has been substantially exclusive to support such a finding. That is not the Ravine Parties' burden.

6.     The PTO's Determinations Are Entitled to Deference

Rather than confronting the PTO's repeated findings or attempting to justify the district court's diverging conclusions, OAI attempts to discredit prior PTO determinations that the "OpenAI" mark is highly descriptive and has not acquired distinctiveness. But neither the district court nor OAI provide a good reason to depart from the PTO's reasoning. The parties did not develop an evidentiary record on the secondary meaning issue in the proceedings below and thus the district court lacked a basis to reject the PTO.

19

OAI cites a Seventh Circuit case to argue that the PTO's findings should be afforded "little weight" because they are non-final office actions (Resp. Br. at 32-33), but courts in this Circuit regularly afford deference to determinations made by the PTO, even when in non-final form. *See e.g., Herbal Chef, LLC v. AFG Distribution, Inc*., 840 F. Appx. 223, 224 (9th Cir. 2021) ("court did not err in considering the [PTO's] non-final denial of the [] federal trademark registration"); *Kifle v. YouTube LLC*, No. 21-cv-01752-CRB, 2022 WL 326613 at *5 (N.D. Cal. Feb. 3, 2022) (deferring to PTO's non-final registration denial and holding plaintiff "no longer plausibly alleged [its mark] is a protected mark").

Although non-final decisions by the PTO may not be binding, this is not a situation where a court considered and rejected findings by the PTO in the exercise of its discretion. To the contrary, the district court expressly *agreed* with the PTO's determination that the "OpenAI" mark is descriptive and started its analysis from the factual premise that the PTO was *correct* in finding that this mark was not protectable as of January 2022. *See* 1-ER-21-22. The district court never said or suggested that it disagreed with any determinations made by the PTO and simply made a contrary decision without evidence or justification.

It is evident the district court made factual errors about the prosecution history, misunderstood the relevant timing, and overlooked significant rulings of the PTO proceedings. Indeed, although OAI's trademark application was filed in

January 2022, OAI did not claim distinctiveness to the PTO until a November 2022 letter which was also rejected. 6-ER-1090-91. OAI's argument that the PTO did not have the "great mass of evidence" presented to the district court is erroneous. OAI argued and submitted "evidence" to support an acquired distinctiveness finding to the PTO – which the PTO rejected as insufficient on both February 23, 2023, and April 12, 2023. Whether by choice or by error, the district court overlooked these PTO rejections. 3-ER-532; 5-ER-905-14; 5-ER-954-63.

Finally, without so much as a record on secondary meaning, or an evidentiary hearing to make the necessary findings, the district court issued an injunction against a senior trademark registration holder in favor of a junior user whose attempts to register the trademark in question have been rejected at every turn. This sets a clear precedent of allowing well-funded, competitors to shut down the business of their predecessors, without having established trademark rights and before even going to trial on the merits.

### C. The Ravine Parties Had Priority of Use Thereby Foreclosing a Finding of Likelihood of Success

Even accepting the district court's conclusion as to secondary meaning in September 2022, the district court erred in finding a likelihood of success because analogous use gives the Ravine Parties priority and valid trademark rights.

OAI and the district court rely on the assertion that the district court need not consider the decision in *Andrusiek v. Cosmic Crusaders LLC* purportedly because "the record before it did not demonstrate that defendants' use of the disputed trademark, technical or analogous, was *bona fide*." 1-ER-4. However, analogous use and "bona fide commercial trade" are two distinct bases to establish priority of use. *See e.g., Cosmic Crusaders, LLC v. Andrusiek*, No. 2023-1150, 2023 WL 6889054, at *4 (Fed. Cir. Oct. 19, 2023). The failure to even consider the analogous use evidence without regard for a "bona fide use in commerce" was reversible error.

Further the lower court's conclusion that there was no bona fide analogous use is contradicted by the record. More than eight months before OAI was formed, Ravine purchased and registered the open.ai domain and prominently posted the mark online. 5-ER-834-37. Starting in 2015, Ravine also "met and communicated about leading executives in the AI field about his Open AI initiative" and registered the "Open AI" mark in the Supplemental Register. 5-ER-835; 5-ER-838-39; 4-ER-589; 5-ER-839; 5-ER-948-50. These activities reflect open use consistent with genuine commercial aspirations, and created the necessary association of "more than a negligible portion of the relevant market." *See T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1377 (Fed. Cir. 1996) ("prior public identification" is a low burden, involving a showing that "more than a negligible portion of the

22

relevant market" has the relevant association). By virtue of this analogous use, the Ravine Parties' use of the "Open AI" mark by no later than November 16, 2022, gave the Ravine Parties priority. *See Andrusiek*, 2023 WL 6889054, at *3.

That the district court took issue with the veracity of a portion of Ravine's testimony should not change this result. As Ravine has openly admitted, in 2016, in support of his "Open AI" registration application, he submitted a specimen of use to reflect the way the site looked in 2015 because files containing the code for the website used in the original filing date no longer existed. 2-ER-183-85. Despite the allegedly improper submission, Ravine was vindicated as forensics captured from server data confirms there was significant traffic and unique legitimate users of Ravine's sites beginning well before OAI's launch. 2-ER-216.

Finally, OAI's reliance on *RXD Media, LLC v. IP Application Development LLC*, 986 F.3d 361 (4th Cir. 2021) has no bearing on this appeal. Setting aside that OAI has not demonstrated any "intervening rights," the facts are inapposite. In *RXD,* the accused infringers expanded their use of the mark. *Id*. at 366-67. The Ravine Parties, on the other hand, have kept to their intent of providing AI tools and services in an open format, and the launch of an AI image-generator was not a "rebrand" or expanded use, but a natural amalgamation of their analogous use within a commercially reasonable timeframe. *See RXD*, 986 F.3d at 366-67.

**D.**   **The Law and Facts Do Not Clearly Favor OAI and thus the Mandatory Injunction was Entered in Error**

The preliminary injunction requested by OAI disrupted the status quo such that OAI should be subject to demonstrating the higher standard of showing "the law and facts clearly favor [its] position." *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015). That burden is not met here and OAI's arguments seeking to avoid this reality are unavailing.

First, OAI claims the Ravine Parties waived the applicability of the higher standard because it was not raised below. (Resp. Br. at 43.) But the Ravine Parties maintained that the injunction would alter the status quo. 5-ER-799. This is sufficient to preserve the issue on appeal. *See Allen v. Santa Clara County Correctional Peace Officers Association*, 38 F.4th 68, 71 (9th Cir. 2022). And in any case, the Ninth Circuit has "the authority to identify and apply the correct legal standard, whether argued by the parties or not." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).

Second, OAI ignores that "the last uncontested status that preceded the parties' controversy" was the *eight years* that OAI was aware that Ravine Parties owned and were using the open.ai domain and disputed mark to which OAI never objected. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). OAI's strained attempt to distinguish the Ravine

24

Parties' case law does not prove otherwise. OAI was aware that Ravine Parties owned and used the open.ai domain name since at least 2015 and tried to purchase the mark on separate occasions. 5-ER-838-39; 5-ER-916-17; 5-ER-952-53. OAI chose not to act and cannot now change that status quo without the law and facts clearly in favor of its position. It has not met its burden under any standard, let alone this heightened one.

## II.    THE DISTRICT COURT ERRED IN DENYING THE RAVINE PARTIES' RULE 59/60 MOTION

Despite OAI's unfounded arguments to the contrary, the Ravine Parties' Rule 59/60 motion was a proper vehicle for relief and the district court abused its discretion in summarily denying the motion.

First, there is no legitimate dispute that the district court's preliminary injunction order is an appealable judgment subject to review under Federal Rules of Civil Procedure 59(e) and 60(b). *See United States v. Martin* 226 F.3d 1042, 1048 (9th Cir. 2000); *see also id.* at n. 8 ("Rule 60(b), like Rule 59(e), applies only to motions attacking final, appealable orders."); *Balla v. Idaho State Board of Corrections*, 869 F.2d 461, 466-67 (9th Cir. 1989).

Second, there is also no dispute that a Rule 59 motion may be presented to correct manifest errors of law or fact and prevent manifest injustice, or that a Rule 60 motion is a vehicle that is "based on the negligent mistake of [] counsel" in

failing to present evidence. *See U.S. Bank National Association v. Thunder Properties, Inc.*, 3:17-CV-00106-MMD-WGC, 2019 WL 2110512, at *2-3 (D. Nev. May 13, 2019); *In re Gilman*, 887 F.3d 956, 963 (9th Cir. 2018).

OAI attempts to cast the Ravine Parties' cited authorities as merely resting on ministerial errors, but in *Thunder,* there was no ministerial mistake but a complete neglect to submit evidence, that existed at the time, and would have created an issue of genuine material fact sufficient to defeat summary judgment if presented. 2019 WL 2110512, at *3. The same is true here where the Ravine Parties' former counsel's failure to object to improper reply evidence or to submit rebuttal evidence was negligence of counsel subject to relief.

The incomplete evidentiary record presented by former counsel led to the district court's conclusions about "troubling allegations against [] Ravine" and determination that the Ravine Parties did not have priority of use of the mark. 1-ER-3-4. The district court should have considered the supplemental evidence. A complete record would establish that, regardless of whether OAI acquired secondary meaning, the Ravine Parties used the "Open AI" mark in commerce well before 2022, were bona fide senior users, or at a minimum, had priority by analogous use. *See* 2-ER-216 (Wikineering logs showing unique, legitimate users); 2-ER-213-15; 2-ER-236-40 (open.ai websites had about "16,334 unique, legitimate users" and 6,202 users signed up with email). The district court's failure to

consider that material and compelling supplemental evidence led to the wrongful entry of the preliminary injunction.

## III.   THE PRELIMINARY INJUNCTION IS IMPERMISSIBLY OVERBROAD

If granted, "an injunction must be [ ] tailored" to address and restrict only the alleged wrongdoing. *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). The district court's preliminary injunction order falls outside this standard and is impermissibly overbroad.

The preliminary injunction restricts the Ravine Parties' ability to conduct any business or activity outside the scope of the field of commerce at issue in this case. This constitutes reversible error. *See, e.g., Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (Preliminary injunction beyond false designation deemed overbroad); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).

The injunction also unconstitutionally impinges on the Ravine Parties' First Amendment rights to free speech. The complete ban on the use of a domain even for non-infringing purposes exceeds the bounds of protecting against consumer confusion. This Court has instructed that preliminary injunctions must be specifically tailored "so as to burden no more protected speech than necessary." *Cochran Firm P.C. v. Cochran Firm Los Angeles,* LLP, 572 F. App'x 491, 494

(9th Cir. 2014); *see also Lockheed Martin Corp. v. Network Solutions, Inc*., 985 F. Supp. 949, 964 n.9 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999) ("Internet users may also have a free speech interest in non-infringing uses of domain names that are similar or identical to trademarks."). The district court's order does not comply with this directive and should therefore be vacated, or at a minimum, remanded with instructions to hold further proceedings and possibly an evidentiary hearing to address the overbreadth.

## IV.   THE DISTRICT COURT ERRED IN FINDING IRREPARABLE HARM TO OAI

As an initial matter, this Court should reject OAI's attempt to rely on supplemental evidence that clearly was not part of the underlying record. (Resp. Br. at 48-49.) Not only is consideration of this purported evidence on appeal improper, the district court specifically denied OAI's underlying motion to supplement the record and declined to consider this evidence. 1-ER-7.

That purported evidence aside, OAI failed to demonstrate immediate threatened injury, and continues to rely only on its *own counsel's* "compilation of screenshots and images" and speculative claims of harm. 10-ER- 2057; 10-ER-2165. These self-serving assertions are not the firmly grounded evidence needed to demonstrate irreparable harm and on which to grant the harsh remedy of injunctive relief. *See adidas America, Inc. v. Skechers, USA, Inc.*, 890 F.3d 747, 759-60 (9th

Cir. 2018). And in actuality, the record indicates that OAI has not been harmed by the business activities of the Ravine Parties, but has "rocket[ed] into the mainstream" following the public release of ChatGPT, released two weeks after Ravine Parties' Image Generator. 5-ER-837.

Setting aside OAI's failure to meet its affirmative burden, the doctrine of laches defeats OAI's presumption of irreparable harm. *See Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Rather than sue to enforce any purported rights, OAI, fully aware of the Ravine Parties use of the domain and public articles linking to the wrong domain, sat on its hands until this lawsuit. In the interim, and contrary to OAI's assertion, the record demonstrates that the Ravine Parties invested significant time and money into its business such that they would be prejudiced by the delay. *See* 5-ER-835-37; 2-ER-178.

OAI's other arguments of delayed impact, progressive encroachment, and escalating harm fare no better. In *National Customer Engineering Inc. v. Lockheed Martin Corp.*, No. CV 96-8938 DDP (ANx), 1997 WL 363970, at *6 (C.D. Cal. Feb. 14, 1997) relied on by the district court and OAI, the plaintiff promptly filed for an injunction the same year that it learned of the defendant's use of the disputed mark. *Id.* Here, OAI willfully chose not to pursue an injunction until 2023, eight years after learning of the Ravine Parties' use of the mark.

Further, under the doctrine of progressive encroachment, a trademark owner can wait to sue for infringement until the junior user of the mark enters into a *new market* and directly competes with the trademark owner. *Internet Specialties West, Inc. v. Million-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 991 (9th Cir. 2009) (emphasis added). However, like in *Internet Specialties West*, the Ravine Parties business activities were "not an expansion into a new market, but rather a natural growth of its existing business." *Id.* The Ravine Parties invested almost a decade of work and human capital investment to develop a business serving millions of users. The Ravine Parties did not expand into a new market, but began developing their own artificial intelligence centric services before OAI was even founded, and naturally continued to progress as a business.

The district court also erred in excusing OAI's delay in pursuing an injunction on the basis of "escalating harm." OAI knew about its potential cause of action eight years ago when OAI knew the Ravine Parties were using the "open ai" domain name and mark, and again when the PTO rejected OAI's trademark application due to similarities to the Ravine Parties' mark. The magnitude of potential harm did not appear gradually; it was distinct and apparent for years. The district court's conclusions otherwise are erroneous.

30

## CONCLUSION

For the reasons set forth herein, and in the Ravine Parties' Opening Brief, the Ravine Parties respectfully submit that this Court should reverse, dissolve, and vacate the preliminary injunction in its entirety. In the alternative, at a minimum, the Court should modify and narrow the scope of the preliminary injunction, or direct the district court to hold further proceedings as necessary to permit the Ravine Parties to maintain and utilize the open.ai domain for permissible purposes.

DATED: June 26, 2024          WAYMAKER LLP

By:   */s/ Ryan G. Baker*
         RYAN G. BAKER
         *Attorneys for Defendants and Appellants*
         *Open Artificial Intelligence, Inc.*
         *and Guy Ravine*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | No. 24-1963

I am the attorney or self-represented party.

**This brief contains** 6,998 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

 [ ] it is a joint brief submitted by separately represented parties.
 [ ] a party or parties are filing a single brief in response to multiple briefs.
 [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Ryan G. Baker | **Date** June 26, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/22*