FILED

NOV 13 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OPENAI, INC.,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>OPEN ARTIFICIAL INTELLIGENCE, INC.; GUY RAVINE,<br><br>Defendants - Appellants. | No. 24-1963<br><br>D.C. No. 4:23-cv-03918-YGR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted October 25, 2024
San Francisco, California

Before: S.R. THOMAS, OWENS, and COLLINS, Circuit Judges.
Dissent by Judge COLLINS.

Defendants Open Artificial Intelligence, Inc. and Guy Ravine appeal from the district court's order granting a preliminary injunction to Plaintiff OpenAI, Inc. in a trademark action under the Lanham Act. Defendants also appeal from the denial of their motion under Fed. R. Civ. P. 59(e) and 60(b) to amend or vacate

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

that injunction. As the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

1. The district court did not abuse its discretion in preliminarily enjoining Defendants from using the contested mark ("OpenAI" or "Open AI"). *See Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (per curiam). The district court found that (1) Plaintiff is likely to succeed on the merits,[1] (2) Plaintiff is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in Plaintiff's favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

To succeed on a trademark infringement claim, a plaintiff must show "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted). Defendants only contest the first element.

[1] Defendants contend the injunction here is mandatory, as opposed to prohibitory, and as such, the district court needed to find that "the law and facts clearly favor" the moving party. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Because Defendants did not raise this argument before the district court, we do not consider it. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991). Moreover, given the gradual nature of Defendants' alleged infringement, the mandatory-prohibitory distinction is particularly "artificial" in this context. *Cf. Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017).

A descriptive mark "can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (citation omitted). A plaintiff must show its mark achieved secondary meaning before a defendant first used the mark. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc). Whether a mark has secondary meaning is a question of fact reviewed for clear error. *Id.* at 1355.

The district court's conclusion that Plaintiff likely acquired secondary meaning in the mark by September 2022, before Defendants first used the mark in commerce, is not clearly erroneous. In July 2022, over one million users had registered for early access to DALL·E 2, and, as of September 2022, more than 1.5 million users were creating over 2 million images per day with DALL·E. The number of people driven to Plaintiff's website supports an inference that "a substantial segment of consumers and potential consumers" associated the mark with "a single source." *Id.* at 1354 (citation omitted). The district court further found that Plaintiff advertised the mark "in association with its goods and services . . . on its website, social media, and marketing," and that it has consistently and exclusively used the mark in association with publicly available artificial intelligence ("AI") tools since 2016.

Defendants allege that in November 2022, they released their own AI "Image Generator," but Plaintiff's evidence suggests this Generator may never have existed. As the district court found, "Open.ai [Defendants' domain] was *only* hosting the third-party Stable Diffusion in November of 2022." And while Defendants criticize the district court for not deferring to the Patent and Trademark Office ("PTO"), "[d]eference to the PTO's classification decision is sensible," but "absent legal error we owe great deference to a district court's factual decision on whether a mark is distinctive." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009).

The district court also did not abuse its discretion in finding that the second *Winter* factor favored Plaintiff. A plaintiff likely to succeed on an infringement claim "shall be entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Defendants argue they rebutted this presumption on a theory of laches because Plaintiff's eight-year delay in suing (from 2015 to 2023) shows any harm was not irreparable. *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006). But a trademark owner may wait until the junior user "moves into direct competition . . . selling the same 'product' through the same channels and causing actual market confusion." *Tillamook*, 465 F.3d at 1110 (citation omitted). Only in November 2022 did the confusion caused by Defendants hosting Stable Diffusion threaten Plaintiff's

goodwill and reputation. *See id.* ("[T]he trademark owner need not sue in the face of *de minimis* infringement . . . ."). Thus, Plaintiff did not unreasonably delay.

2. As to Defendants' request that the injunction be narrowed to permit them "to use the open.ai domain for non-infringing purposes," Defendants may raise this argument to the district court on remand.

3. Finally, the district court did not abuse its discretion in denying Defendants' motion for relief under Rule 59(e) or, in the alternative, Rule 60(b). *See U.S. for Use & Benefit of Familian Nw., Inc. v. RG & B Contractors, Inc.*, 21 F.3d 952, 954 (9th Cir. 1994). The district court reasonably concluded that Defendants—having retained new counsel following the district court's preliminary injunction order—"essentially ask[ed] for a re-do."

"[A] preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)." *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) (citation omitted). And while "Rule 59(e) permits a court to alter or amend a judgment, . . . it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

Defendants fault the district court for relying on a declaration by Plaintiff's expert, submitted on reply in support of the preliminary injunction. But the court

reasonably concluded that previous defense counsel's failure to challenge that declaration before the preliminary injunction issued was a "strategic decision." Defendants had multiple opportunities to challenge the declaration or submit additional evidence in opposition. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890-91 (9th Cir. 2000) (affirming denial of Rule 59(e) relief where plaintiffs raised, for the first time, a choice-of-law argument they had "numerous opportunities" to raise previously). Further, the evidence Defendants submitted with their Rule 59/60 motion existed at the time of the preliminary injunction hearing. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (upholding denial of Rule 59(e) motion that "sought to introduce facts that were available earlier in the proceedings").

**AFFIRMED.**

FILED

NOV 13 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*OpenAI, Inc. v. Open Artificial Intelligence, Inc., et al.*, No. 24-1963

COLLINS, Circuit Judge, dissenting:

In my view, the district court's orders supporting its grant of a preliminary injunction failed to identify and apply the correct legal standards and made confusing and insufficiently explained findings. I would therefore vacate its orders and remand for it to reconsider the matter. To the extent that the majority concludes otherwise, I respectfully dissent.

In their briefs in this court, both sides agree that, in order for Plaintiff OpenAI, Inc. to demonstrate a likelihood of success on the merits, it "must establish that its mark had acquired secondary meaning before the first infringing use by" Defendants Open Artificial Intelligence, Inc. and Guy Ravine. *Converse, Inc. v. International Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1116 (Fed. Cir. 2018). The district court's orders never squarely identified this controlling legal rule, and it consequently failed to make clear factual findings sufficient to support a conclusion that a preliminary injunction was warranted under that standard.

Although the district court's orders are not a model of clarity, the court appears to have accepted that November 16, 2022 was the date on which Defendants' first allegedly infringing use occurred, and the court rejected Defendants' arguments for an earlier date. On appeal, the parties also appear to

accept that, under the district court's orders, November 16, 2022 was the relevant date of Defendants' first use of the mark. The question, then, is whether the district court made a sufficient finding that Plaintiff's mark had acquired secondary meaning by that date.

In its original order, the district court did not make any express finding as to when Plaintiff's mark had acquired secondary meaning. Moreover, that order had assumed that, when the U.S. Patent and Trademark Office ("USPTO") had rejected Plaintiff's application to register its mark on "January 3, 2022," the mark was not yet "distinct enough to guarantee [P]laintiff its exclusive use," but that the subsequent launches of "two products, ChatGPT and DALL E 2," in November 2022 and September 2022 had made Plaintiff's mark "a household name."

When Defendants pointed out in a reconsideration motion that the USPTO denial had occurred in January 2023 and not in January 2022—thereby calling into question the court's chain of reasoning—the district court issued an order that included two "errata." The first change corrected the date of the USPTO decision to January 2023, but nonetheless retained the prior order's assumption that, as of January 2022, Plaintiff's mark was "not distinct enough to guarantee [P]laintiff its exclusive use." The second change "corrected" the original order's statement that, "since at least September of 2022, if not earlier," Plaintiff's mark "was at least suggestive." It did so by changing the phrase "was at least suggestive" to "had

acquired secondary meaning." In the remainder of its second order, the district court explained why it denied Defendant's motion for reconsideration. The court stated that its continued assumption that Plaintiff's mark lacked secondary meaning as of January 2022 was now based on that being the date of the *application* to the USPTO, rather than the date of the USPTO order (which the court now acknowledged was January 2023). In defending its newly added statement that Plaintiff's mark had acquired secondary meaning as of "September of 2022, if not earlier," the court explained that "[w]hat mattered is that, as of September and November of 2022, when [P]laintiff released DALL-E and ChatGPT to the public with the OpenAI mark, [P]laintiff had made a strong evidentiary showing that it is likely to prove at trial that its mark had acquired secondary meaning." The court also stated that, "more importantly, whether [P]laintiff acquired secondary meaning by the end of 2022 or the beginning of 2023, the [c]ourt found that [P]laintiff is likely to prove that it has a protectible interest in its mark; [D]efendants, on the record on front of it [*sic*] at the preliminary injunction stage, could not."

These confusing orders confirm that the district court "fail[ed] to identify and apply the correct legal rule to the relief requested" and therefore abused its discretion. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). The court's comments in its reconsideration order clearly suggest that it thought the relevant standard was which party's mark first acquired

secondary meaning, but that is wrong. *See Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978) ("Priority depends not upon which mark succeeds in first obtaining secondary meaning but upon whether the plaintiff can prove by a preponderance of the evidence that his mark possessed secondary meaning at the time the defendant commenced his use of the mark."), *abrogated on other grounds as recognized in Shire US Inc. v. Barr Laboratories, Inc.*, 329 F.3d 348, 352–53 n.10 (3d Cir. 2003); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980) (same).

Moreover, the district court's blue-penciling of its prior order to add a specific finding that Plaintiff's mark acquired secondary meaning "since at least September of 2022, if not earlier" is hard to square with what that original order actually said or with the reconsideration order. As noted earlier, the original order seemed clearly to assume that, as of the time of the USPTO's *denial* of Plaintiff's application, secondary meaning had not been established, but when Defendants pointed out that the date of the denial was actually January 2023 rather than January 2022, the district court, without adequate explanation, shifted to using the date of the *application* to the USPTO rather than the date of the USPTO's denial. Furthermore, the reconsideration order's explanation for that new secondary-meaning finding generically refers to the fact that, "as of September and November of 2022, . . . [P]laintiff released DALL-E and ChatGPT to the public with the Open

AI mark." But ChatGPT was released on November 30, 2022, and it therefore cannot be used to establish secondary meaning as of November 16, 2022. Notably, the district court's original order never explicitly stated that the release of DALL-E 2 alone established secondary meaning in Plaintiff's mark; instead, it recited only a combined finding that the release of "ChatGPT and DALL E 2" had made that mark "a household name."

The majority notes that there is evidence in the record that it concludes would support a finding that the release of DALL-E 2 in September 2022 was sufficient to establish secondary meaning in Plaintiff's mark. *See* Memo. Dispo. at 3. But given the district court's failure to apply the correct legal standard and given the ambiguities and inconsistencies as to what the district court found and why, I would vacate its orders and remand for that court to make the appropriate factual findings under the correct legal standards. The fact that the record may contain evidence that arguably *could* support a proper finding under the correct standards cannot substitute for the fact that the district court did not make that proper finding. Moreover, the district court's orders appear to have overlooked that the "[p]opularity of a product is not synonymous with secondary meaning," 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 15:47 (5th ed. Sept. 2024 update), and that it is only in atypical cases that a product's introduction results in a very rapid acquisition of secondary meaning, *see*

*PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 565 (2d Cir. 1990). ChatGPT may indeed be that sort of unusual product, and it (combined with the earlier release of DALL-E 2) may have rapidly made "OpenAI" a "household name," but the district court did not specifically find that DALL-E 2 *alone* sufficed to make Plaintiff's mark a household name before November 16, 2022.

Because the district court did not apply the correct standards and made confusing, internally inconsistent, and inadequately explained findings, it abused its discretion in granting the preliminary injunction. I would vacate its orders and remand for it to reconsider the matter afresh.

I respectfully dissent.